# EXHIBIT – A –



# WEBSITE DEVELOPMENT AGREEMENT

THIS AGREEMENT ("Agreement") is entered into as of the date on the signature page (the "Effective Date") by and between McCandless Group, LLC, with its principal place of business located at 3141 Michelson Drive #1307, Irvine, CA 92612 (the ("Developer") and Jessica Marie Bartlett with a principal place of business located at 550 North Figueroa Street #5027, Los Angeles, CA 90012 (the "Customer" or "you" or "your") each individually a "Party" and collectively the "Parties."

    **WHEREAS,** Developer is engaged in the business of website and software development.

    **WHEREAS**, Customer wishes to utilize the services of Developer in connection with the development of software identified as the Jessica Marie Bartlett Website (the "Website").

    **NOWTHEREFORE,** in consideration of the promises and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

**1.**     **Services.**   Subject to the terms and conditions of this Agreement, the Customer hereby retains Developer to perform the services set out below ("Services" or "Work").

1.1     General.

    a.     Developer will perform the services of website development and support of the Website according to specifications set forth therein (the "Website").

    b.     The Website will be for Customer's brand that allows the Customer to provide exclusive content to the Customer's audience through the Website.

    c.     Customer will cooperate with Developer's reasonable requests for information, content, and data necessary for the completion of the Website.

1.2     Services to be provided:

    a.     The Developer will provide the Customer with a Website that provides support for exclusive content of the Customer including both photos and videos that are made exclusive to those subscribed by paying for a subscription. Subscribers will also have the ability to chat with the Customer through the website.

    b.     The design and interface of the Website will follow the template assigned to it by the Developer.

   c. The Customer guarantees that the Developer will be supplied with the Work to be completed.

   d. The Website shall contain a statement substantially similar to "Powered by McCandless Group" and such copyright and trademark notices as the Developer reasonably believes are appropriate.

   e. The Developer will be providing the Product "AS-IS" and no custom development will be included under this Agreement excepting that included in the functionalities above. Any maintenance, repair, modification, upgrade or enhancement of the Website shall be pursuant to a separate mutually acceptable written agreement between the Customer and the Developer.

   f. It is understood and agreed that the Customer will use the Website and its content to promote their exclusive content with the purpose of monetizing the Customer's fans and shall not be used for any other purposes without written permission from the Developer.

**2.** **Compensation.**

2.1 In consideration of the Services to be provided by Developer to the Customer hereunder, the Customer shall pay to Developer the following compensation ("Compensation"):

   a. Fifteen percent (15%) of the Gross Revenue collected from the Website in perpetuity.

    (i) Developer shall be responsible for collecting sales charges generated from the Website and shall remit Customer's eighty-five percent (85%) of the Gross Revenue (a "Distribution").

    (ii) Distributions shall be made no later than on the end of the first (1st) week of each month for the amount owed as a result of the prior months' sales.

    (iii) Developer shall provide Customer with access to the reporting software used to track revenue.

2.2 "Gross Revenue" shall mean:

   a. All sales collected by Developer from the Website of any kind.

   b. All sales generated from social media and other sites which Customer uses to market products and services offered on the Website.

**3.** **Term and Termination.**

3.1 This Agreement shall commence on the Effective Date and shall continue for a period of twelve (12) months (the "Initial Term") and shall renew for successive twelve

2

(12) month periods (each a "Renewal Term") unless terminated by either party by providing written notice to the other Party no less than ninety (90) days prior to Renewal Period of its intent to not renew the Agreement.

3.2     Customer may not terminate this Agreement at any time, for any reason, during the Initial Term. Any such termination shall be a material breach of this Agreement for which Developer may collect damages including those liquidated damages as stated below.

3.3     Customer grants exclusivity to the Developer by the Customer and shall not provide for any subscription services using any other means rather than the Website to be developed for the period of twelve (12) months after the Website's launch date and for any Renewal Period.

4.      **Relationship of the Parties.**  The Developer is and shall remain an independent contractor of the Customer and nothing contained in this Agreement shall be deemed to create an employer/employee, principal/agent, partnership or joint venture relationship between the parties. The Customer shall not provide the Developer with any benefits that the Customer may provide to its employees and shall not be required to withhold income taxes on, or to pay payroll taxes with respect to, the sums to be paid to the Developer hereunder. The Developer agrees that he shall be solely responsible for all excise, self-employment and other taxes relating to the receipt of payments hereunder. As an independent contractor, it is expressly agreed that the Developer operates at his/her own expense and risk. The Developer is not authorized to execute any agreements, make any changes in any agreements, incur or assume any obligations, liabilities or responsibilities, or perform any other act in the name of or on behalf of the Customer. Each party shall have the obligation to supervise, manage, contract, direct, procure, pay, perform or cause to be performed all work and other obligations to be performed by such party pursuant to the terms of this Agreement and shall be liable for the acts or omissions of its or his/her employees and agents in performing its or his/her respective obligations or exercising its or his/her respective rights hereunder.

5.      **Confidential Information.**

5.1     Definition of Confidential Information. For the purposes of this Agreement, "Confidential Information" means any information disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects which is designated or described by the disclosing party as "Confidential," "Proprietary" or some similar designation, or which should reasonably be understood by the receiving party, because of the circumstances of disclosure or the nature of the information itself to be confidential or proprietary to the disclosing party. Confidential Information shall include, but not be limited to, the pricing and payment terms contained in this Agreement. In the event Developer is included in any image, video or content posted by Customer in Customer's Content, Customer shall maintain identification of Developer confidential and may not under any circumstances disclose Developer's identity. Confidential Information may also include information disclosed to

3

a receiving party by third parties on behalf of the disclosing party. Confidential Information shall not include any information which (i) is publicly known through no action or inaction of the receiving party; (ii) was already in the possession of the receiving party at the time of disclosure without an obligation of confidentiality, direct or indirect, to the disclosing party; (iii) is obtained by the receiving party from an independent third party without a breach of such third party's obligations of confidentiality; or (iv) is independently developed by the receiving party without use of or reference to materials provided by the disclosing party.

5.2     Non-use and Nondisclosure. Each party agrees that it will not use any Confidential Information of the other party for any purpose except for the purpose of this Agreement. Each party agrees that it will not disclose any of the other party's Confidential Information to anyone except for such party's own directors, officers, employees, and attorneys who are required to have the information in connection with the purpose of this Agreement ("Representatives"). In the event that a receiving party is required by law to disclose Confidential Information obtained from the disclosing party, the receiving party shall give the disclosing party prompt written notice of such requirement as soon as possible prior to such disclosure and shall provide the disclosing party with assistance in obtaining an order protecting the information from disclosure.

5.3     Each party agrees that it shall take reasonable measures to protect the secrecy of and avoid the disclosure and the unauthorized use of the other party's Confidential Information. Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly confidential information and shall ensure that each of its Representatives who have access to the other party's Confidential Information has signed a non-use and nondisclosure agreement in content similar to the provisions hereof, prior to any disclosure of Confidential Information to such Representative. Neither party shall make any copies of the other party's Confidential Information without the disclosing party's prior written consent.

5.4     Term of Confidentiality. The term of this Confidentiality Section shall remain in effect until terminated by either party with written notice to the other party, but such termination shall have no effect on either party's obligations hereunder with respect to Confidential Information already disclosed. The obligations of each receiving party hereunder as to any Confidential Information shall continue in perpetuity from the date such Confidential Information is disclosed or if applicable until such information is no longer a trade secret of the disclosing party, whichever occurs last, and shall survive termination of this Agreement.

**6.     Ownership of Intellectual Property.**

6.1     Except as may be otherwise granted herein, title to and ownership of all intellectual property rights including, without limitation, any patent, trademark, copyright or intellectual or industrial property right (the "Developer Intellectual Property") relating to the Software shall at all times remain with Developer. Customer expressly acknowledges that it does not have and shall not, by virtue of this Agreement, acquire any title or proprietary rights whatsoever of any kind in or over the

4

Software or any improvements, updates, adaptation, modification, research, development, derivation, addition, extension, changes, or other Developer Intellectual Property related to the Software.

6.2     Developer hereby grants to Customer a perpetual, non-exclusive, non-transferable, royalty-free, worldwide right to use the Software for those purposes intended by this Agreement.

6.3     Customer reserves all its respective rights, title, and ownership in its respective intellectual property owned or developed independently of this Agreement, including images, videos, written content and other personal content ("Customer Intellectual Property"). Developer expressly acknowledges that it does not have and shall not, by virtue of this Agreement, acquire any title or proprietary rights whatsoever of any kind in or over Customer Intellectual Property.

6.4     Developer may use, reproduce and copy Customer Intellectual Property for the purposes of planning, operating, managing, optimizing, implementing and maintaining the Website, subject to the maintenance of confidentiality in accordance with Section 5 herein.

**7.      Customer Content.**

7.1     All Content on the Website is the sole responsibility of the person who originated such content. All Content transmitted by Customer is at Customer's own risk and Customer is solely responsible and liable for any damage or loss to resulting therefrom. Developer reserves the right to remove any objectionable Content in their sole discretion.

7.2     Customer understands that by providing Content in connection with the Service Customer hereby grants Developer a non-exclusive, worldwide, royalty free, perpetual, irrevocable, sublicensable and transferable right to fully exploit such Content (including all related intellectual property rights) in connection with Developer's business.

**8.      Customer Representations.**

8.1     Customer will use the Website and its content to promote their exclusive content with the purpose of monetizing the Customer's followers and shall not be used for any other purposes without written permission from the Developer.

8.2     Customer shall post unique content on the Website at least one (1) time daily, five (5) days a week, for the subscribers for the life of the term.

8.3     Customer commits themselves to promote the Website and its content at least one (1) time weekly on social media for the life of the term.

8.4     Customer will include the url to the Website in the bio of their social media accounts for the life of the term. Customer has the right to include other links in the bio in the case of a brand deal with such requirement.

8.5     Customer will be using the following social media channel for all of the social media promotions mentioned above:

5

    a.    Instagram: @jessicambartlett

    b.    Should the name of the Customer's account be changed, this name will be deemed to have been recognized and valid within this agreement along with the new account name.

8.6    In the event Customer fails to deliver any of the requirements as contained in Sections 8.1 – 8.5, Customer shall pay to Developer the amount of Seven Thousand Five Hundred Dollars ($7,500) in liquidated damages upon notice from Developer of such failure without the curing of such within five (5) days. This right to cure shall be available to Customer one (1) time and thereafter no right to cure shall exist following a second (2nd) failure to adhere to the above obligations.

8.7    Customer warrants and represents that all information as contained in the attached ADULT MODEL RELEASE: 2257 COMPLIANT FORM is true and accurate.

**9.**    **Indemnity.**    At all times, Customer shall protect, indemnify, defend and hold the Developer, including its affiliates and subsidiaries, officers, directors, shareholders, members, employees, agents, representatives, successors and assigns harmless from and against any and all penalties, claims, losses, liabilities, damages, charges, costs and/or expenses (including, without limitation, attorneys' fees and court costs) rising out of or resulted from or in any way or in any manner connected with or related to any acts or omissions or breach of this Agreement, of Customer, including but not limited to subsection 8.7 herein.

**10.**    **Warranty, Disclaimer and Limitation of Liability.**

10.1    Your use of the Service is at your sole risk. The Service and the associated materials and content are provided on an "as is" and "as available" basis. Except as otherwise expressly provided in this Agreement, Developer, its parent, subsidiary and other affiliated companies, and their respective officers, directors, employees, agents and other representatives (collectively, the "Developer Parties"), expressly disclaim all warranties of any kind, whether express or implied, including, but not limited to the implied warranties of merchantability, fitness for a purpose and non- infringement. Without limiting the generality of the foregoing, the Developer Parties make no warranty that: (i) the Service will meet your requirements; (ii) the Service will be uninterrupted, timely, secure, or error-free; and/or (iii) any errors in the Service will be corrected.

10.2    The Developer Parties shall not under any circumstances be liable for any damages of any kind arising out of, in connection with or relating to the use of or inability to use the Service, including any liability: (i) as a publisher of information; (ii) for any incorrect or inaccurate information or any 'bug' of the Service; (iii) for any unauthorized access to or disclosure of your transmissions or data; (iv) for statements or conduct of any third party on or via the Service; (v) for any disputes between users of the Service or between a User of the Service and you; (vi) for lost data; (vii) cost of procurement of substitute products or services; (viii) for any technical malfunction that may arise from problems with computer systems, software code, servers, computer equipment, mobile phones, software, infrastructure connections or any combination

thereof. or (ix) for any other matter relating to the Service or any third party. This is a comprehensive limitation of liability that applies to all damages of any kind, including any direct, indirect, special, incidental or consequential damages, whether based on breach of contract, breach of warranty, tort (including negligence), product liability or otherwise, even if an individual advises the Developer Parties of the possibility of such damages. The limitations of liability set forth herein are fundamental elements of the basis of the bargain between the Developer and you. The products, information and services offered on and through the Service would not be provided to you without such limitations.

10.3     Notwithstanding the foregoing, the sole and entire maximum liability of the Developer Parties for any reason, and your sole and exclusive remedy for any cause or claim whatsoever, shall be limited to any amounts paid by you to Developer during the three (3) months prior to the date any cause of action may have occurred.

10.4     You agree that regardless of any statute or law to the contrary, any claim you may bring must be filed within one (1) year after the cause of action accrues or it will be permanently barred.

10.5     Some jurisdictions do not allow the disclaimer of certain warranties or the limitation or exclusion of liability for certain types of damages. accordingly, some of the above disclaimers and limitations may not apply to you.

10.6     If you are a California resident, you shall and hereby do waive California Civil Code Section 1542, which says: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which, if known by him must have materially affected his settlement with the debtor."

**11.     Force Majeure.**  A party will be not be considered in breach or in default because of and will not be liable to the other party for, any delay or failure to perform its obligations under this agreement by reason of fire, earthquake, flood, explosion, strike, riot, war, terrorism, or similar event beyond that party's reasonable control (each a "Force Majeure Event"). However, if a Force Majeure Event occurs, the affected party shall, as soon as practicable:

      a.     Notify the other party of the Force Majeure Event and its impact on performance under this agreement; and

      b.     Use reasonable efforts to resolve any issues resulting from the Force Majeure Event and perform its obligations under this agreement.

**12.     Governing Law, Jurisdiction**.  If any dispute arises under the terms of this Agreement, the parties agree to select a mutually agreeable neutral third party to help them mediate such. If mediation is unsuccessful, the Parties agree that any dispute shall be in all respects construed in accordance with and governed by the laws of the State of California without regard to conflict of law principles. Costs and fees (including attorneys' fees) associated with the mediation or arbitration shall be responsibility of each individual party.

13. **Miscellaneous**.

    a.    Entire Agreement; Modification. This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof. No modification hereof shall be binding upon the parties hereto except by written instrument duly executed by such parties or their duly authorized representatives.

    b.    Invalidity of Particular Provisions. If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms of this Agreement, or the application of such terms or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

    c.    Counterparts. This Agreement may be executed in any number of counterparts, including electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

    d.    This Agreement may be delivered by email, and email copies of executed signature pages shall be binding as originals.

    e.    Interpretation. The paragraph headings of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement in construing or interpreting any provision hereof. Whenever the context requires, words used in the singular shall be construed to include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine or neuter gender.

    f.    Notices. All notices given under this Agreement must be in writing. A notice is effective upon receipt and shall be sent via one of the following methods: delivery in person, overnight courier service, certified or registered mail, postage prepaid, return receipt requested, or by any other means agreed to by the Parties, such as email.

    g.    This agreement will become effective when all parties have signed it. The date this agreement is signed by the last party to sign it (as indicated by the date associated with that party's signature) will be deemed the Execution Date of this agreement.

    h.    Each party shall use all reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and make effective the transactions this agreement contemplates or to evidence or carry out the intent and purposes of this agreement.

8

IN WITNESS WHEREOF, the parties have executed this Agreement effective the date stated above.

| DEVELOPER: | CUSTOMER: |
|---|---|
| Business Name: McCandless Group, LLC | Business Name: Jessica Marie Bartlett |
| Address: 3141 Michelson Drive, Unit 1307, Irvine, CA 92612 | Address: 550 North Figueroa Street #5027, Los Angeles, CA 90012 |
| Telephone Number: 919-791-6441 | Telephone Number: 805-835-8052 |
| Email Address: nick@nickmccandless.com | Email Address: jbartlett@berkeley.edu |
| By: _*Nicholas McCandless*_ (DocuSigned: CC0CECA0BA5C475...)<br>Signature | By: _*Jessica Bartlett*_ (DocuSigned: F1B789CDC1A4452...)<br>Signature |
| Full Name: Nicholas McCandless<br>Title: CEO/Owner/Founder | Full Name: Jessica Marie Bartlett |
| Date: 10/27/2019 | Date: 10/27/2019 |

9

# EXHIBIT A

## ADULT MODEL RELEASE: 2257 COMPLIANT FORM

## ADULT MODEL RELEASE: 2257 COMPLIANT FORM:

### Model Name:

| | |
|---|---|
| MODEL'S LEGAL NAME: | **Jessica Marie Bartlett** |
| STAGE NAME [IF ANY]: | Jessica Bartlett |
| ALIAS [IF ANY]: | Jessica Bartlett |
| MAIDEN NAME: | |
| PROFESSIONAL NAME: | |
| ALSO KNOWN AS: | |
| ALSO KNOWN AS: | |

If model has additional names, must include:

### Identification Produced:   First form of identification produced

| | |
|---|---|
| Driver's License Number: | California – F4389157 |
| Passport Number: | |
| State Identification Card Number: | |
| School I.D. Number: | |
| Selective Service Card Number: | |
| Work Identification Card Number: | |
| Date of Birth of Model: | 06/10/1996 |
| Address of Model: | 550 North Figueroa Street #5027 |
| City: | Los Angeles |
| State: | California |

### TERMS AND CONDITIONS:

I, the undersigned model (hereafter model) do hereby voluntarily authorize and give permission to Company/Producer below (hereafter Producer) to the exclusive use of: photographs, video, electronic and digital reproductions in any form of my person or personal property

From the date of execution of this General Release and Authorization, the undersigned hereto does hereby grant, release and assign to Producer any and all claims of right whatsoever in and to all photographs or printed materials of the undersigned or by the undersigned and delivered to

10

Producer for any purpose chosen by Producer.

From execution hereto and for value received and acknowledged below by model Producer shall exclusively and irrevocably own in perpetuity all right, title and interest, including copyright, in and to the digitized photographs, reproductions, video and any digitized printed material of the undersigned with no rights expressly reserved by the model.

Model also grants Producer and its designees the right to use her name, likeness, image voice, appearance, and performance as embodied in the Product whether recorded on or transferred to videotape, film, slides, photographs, audio tapes, or other media, now known or later developed. This grant includes without limitation the right to edit, mix or duplicate and to use or re-use the Product in whole or part as Producer may elect. Producer or its designee shall have complete ownership of the Product in which model appears, including copyright interests, and model acknowledges that she has no interest or ownership in the Product or its copyright.

Model also confirms that she/he has the right to enter into this Agreement, that she/he is not restricted by any commitments to any parties, and that Producer has no financial commitment or obligations to me as a result of this Agreement besides the consideration already paid.

I hereby give all clearances, © 2019 McCandless Group, LLC bodied in the Product. I expressly release and indemnify Producer and its officers, employees, agents and designees from any and all claims known and unknown arising out of or in any way connected with the above granted uses and representations. The rights granted Producer herein are perpetual and worldwide survive my death and any other occurrence.

In consideration of all the above, I hereby acknowledge receipt of reasonable and fair consideration from the Producer received and paid.

## AS TO MODEL:

| MODEL'S SIGNATURE: | *DocuSigned by:* Jessica Bartlett  F1B789CDC1A4452... |
|---|---|
| Dated on: | 10/27/2019 |

I the above-signed model do hereby certify and swear under unsworn declaration of perjury that the following is true and correct by my above signature and that I agree with such terms.
I swear that I am above 18 years of age
I swear that I have disclosed my correct legal name
I swear that I have disclosed all other names that I have been known by to producer
I swear that I have produced a legal identification card
I swear that I have not provided any false or misleading information to producer

## AS TO PRODUCER:

| Producer's Name: | Nicholas McCandless |
|---|---|
| Company Name: | McCandless Group, LLC |

11

| Dated on: | October 27, 2019 |
|---|---|