# EXHIBIT – B –

DocuSign Envelope ID: 683D0F06-CDB6-489F-9AD2-22AF033F89BB



# MUTUAL CONFIDENTIALITY AGREEMENT

**THIS MUTUAL CONFIDENTIALITY AGREEMENT** (this "Agreement") is entered into as of the date on the signature page (the "Effective Date") by and between McCandless Group, LLC, with its principal place of business located at 127 Bowery, Irvine, CA 92612 (the "Developer") and Jessica Bartlett with a principal place of business located at 404 Cool Valley Dr, Paso Robles, CA 93446 (the "Partner" or "you" or "your") each individually a "Party" and collectively the "Parties."

WHEREAS, the Parties are contemplating business transactions or a collaboration (the "Proposed Transaction") that will require each to disclose information to the other that is confidential, proprietary and competitively sensitive, for example, regarding software, technology, data, customers, products, processes, and business objectives (each as either a "Disclosing Party" or "Receiving Party");

WHEREAS, the Parties are willing to disclose said confidential and proprietary information to each other according to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. For purposes of this Agreement, the term "Confidential Information" shall mean information, directly or indirectly relating to the Disclosing Party or its affiliates, shareholders, officers, directors or employees and obtained by the Receiving Party in connection with its evaluation of the Proposed Transaction prior to or after the date of this Agreement, (including information conceived or originated, discovered or developed by the Receiving Party by reference to such information or containing such information), and whether orally, in documents, through and by observation or otherwise, together with all summaries, compilations, analyses, and reports created by the Receiving Party from such information or that contains such information. Without limiting the intended generality of the foregoing, Confidential Information shall include the Disclosing Party's existing or contemplated business, processes and services, techniques, components, sales, markets, costs, profits, research, development, inventions, purchasing, staff, employees, compensation, contractors, suppliers, customers, prospects, marketing, pricing policies, financial information, engineering and all other data. Confidential Information also includes, but is not limited to, all proposals and all information and data furnished by or on behalf of the Disclosing Party or any of its Representatives (as defined below).

2. The term "documents" includes, but is not limited to, writings, drawings, graphs, charts, photographs, tape recordings, computer application files, disc drives, tapes, compact discs, e-mail, electronic data, and other media, and data compilations in whatever form recorded or stored from which information can be obtained and/or translated if necessary, through detection devices, into reasonably usable form and any reproductions thereof.

3. As used in this Agreement, the term "Representative" means, as to any person, such person's wholly owned affiliates and their directors, officers, employees, agents and advisers (including, without limitation, investment bankers, accountants and legal counsel).  As used in this Agreement, "wholly owned affiliate" shall mean, with respect to any person which (a) controls such person either directly or indirectly; or (b) is controlled directly or indirectly by such person; or (c) is directly or indirectly controlled by a person which directly or indirectly controls such person. "Control" means, for purposes of this definition of "wholly owned affiliate", the right to exercise a majority of the voting rights (with the exception of voting rights attaching to de minimis shareholdings required by applicable laws to be held by other person(s)) in the appointment of the directors or similar representatives on the governing body of such person or, if there are no such voting rights, the power to appoint the management or otherwise direct the business or determine the policy of such person.  As used in this Agreement, the term "person" shall be broadly interpreted to include, without limitation, any organ, ministry, agency or instrumentality of any country or any other governmental, quasi-governmental or political subdivision thereof; any corporation, company, partnership or joint venture; or any other entity or individual.  In connection with the evaluation of the Proposed Transaction, the Parties are willing, in accordance with the terms and conditions of this Agreement, to disclose to the each other certain proprietary confidential information relating to the Proposed Transaction and the Area.

4. Subject to the immediately succeeding paragraph, unless otherwise agreed to in writing by the Disclosing Party, the Receiving Party agrees: (a) to keep all Confidential Information confidential and not to directly or indirectly disclose, disseminate, or reveal, and to use its best efforts to prevent the use, dissemination, disclosure, or revelation of, any Confidential Information to any person other than those of its Representatives who are actively and directly participating in the evaluation and negotiation of the Proposed Transaction or who otherwise need to know such Confidential Information for the purpose of the Proposed Transaction and to cause those persons to observe the terms of this Agreement; (b) not to directly or indirectly use Confidential Information for any purpose other than in connection with the evaluation and negotiation of the Proposed Transaction; and (c) not to disclose to any person (other than those of its Representatives who are actively and directly participating in the evaluation and negotiation of the Proposed Transaction or who otherwise need to know such Confidential Information for the purpose of the Proposed Transaction and, in the case of its Representatives, each of whom the Receiving Party will cause to observe the terms of this Agreement as if he or she had been a party hereto) any information about the Proposed Transaction, or the terms or conditions thereof or any facts or circumstances relating thereto or the status thereof, including, without limitation, the fact that Confidential Information has been or will be made available to the Receiving Party or its Representatives or that discussions are taking place with respect to the Proposed Transaction.  The Receiving Party will be responsible for any breach of the terms of this Agreement by it or its Representatives.

5. Neither Party will disclose to any person (other than those of its Representatives who are actively and directly participating in the evaluation and negotiation of the Proposed Transaction or who otherwise need to know such Confidential Information for the purpose of the Proposed Transaction and, in the case of its Representatives, each of whom the Party will cause to observe the terms of this Agreement as if he or she had been a party hereto) any information about the Proposed Transaction, or the terms or

Case 2:21-cv-02069-DOC-KES   Document 89-2   Filed 03/16/22   Page 4 of 6   Page ID #:1538

conditions thereof or any facts or circumstances relating thereto or the status thereof, including, without limitation, the fact that Confidential Information has been or will be made available to the Parties or their Representatives or that discussions are taking place with respect to the Proposed Transaction.

6. Confidential Information does not include, however, information that (a) is or becomes generally available to the public other than as a result of a disclosure, act or omission by the Receiving Party or its Representatives without the Disclosing Party's consent, (b) is or becomes available to the Receiving Party on a non-confidential basis from a person other than the Disclosing Party or its Representatives and other than as a result of a breach of an obligation of confidentiality to the Disclosing Party or its Representatives or a breach of any other obligation of such person not to transmit the information to the Receiving Party or any of its Representatives or (c) was known or developed independently by the Receiving Party without reference to any Confidential Information, or was available to the Receiving Party prior to its disclosure by the Disclosing Party. The onus of establishing that any of the above exceptions applies shall in each case be on the Receiving Party.

7. In the event that the Receiving Party is requested pursuant to, or required by, applicable law, regulation, rule or order of a duly empowered court, tribunal or governmental entity having jurisdiction over it or its Representatives, to disclose any Confidential Information, the Receiving Party shall, to the extent permitted by such applicable law, regulation, rule or order, provide the Disclosing Party with prompt notice of such request or requirement in order to enable the Disclosing Party to seek an appropriate protective order or other remedy, to consult with the Receiving Party with respect to the Disclosing Party's taking steps to resist or narrow the scope of such request or requirement, or to waive compliance, in whole or in part, with the terms of this Agreement. The Receiving Party will furnish only the portion of the Confidential Information that is legally required and will, at the Disclosing Party's sole expense, use its reasonable best efforts to ensure that all Confidential Information and other information that is so disclosed will be accorded confidential treatment by the Receiving Party thereof.

8. This Agreement does not obligate the Disclosing Party to produce any Confidential Information whatsoever. In the event that the Disclosing Party chooses to produce Confidential Information, this Agreement does not create a continuing obligation to produce any other information or to update any information that has been previously produced.

9. All documents containing, and all other tangible and intangible forms of, Confidential Information, including copies thereof, shall belong to and remain the sole property of the Disclosing Party. The Receiving Party shall acquire no proprietary interest in or right to any of the Confidential Information absent written agreement by the Disclosing Party.

10. The Receiving Party shall not take or make copies of the Confidential Information or any of it, or authorize any other person to do so, other than for the purpose of supplying the Confidential Information to any of its Representatives to whom disclosure of such information is permitted under the terms of this Agreement. If at any time the Disclosing Party, in its sole discretion, so requests in writing, then the Receiving Party will promptly deliver to the Disclosing Party all original Confidential Information with respect to the relevant Proposed Transaction and promptly deliver to the Disclosing Party or destroy all copies, reproductions, summaries, compilations, analyses and extracts thereof or

3

based thereon in the possession of the Receiving Party or its Representatives, whether maintained in written form or in any electronic or computerized format, and certify to the Disclosing Party that all such originals have been delivered to the Disclosing Party and that such destruction has occurred.

11. The Receiving Party acknowledges that neither the Disclosing Party nor any of its Representatives makes any express or implied representation or warranty as to the accuracy or completeness of any Confidential Information, and the Receiving Party agrees that none

    of such persons shall have any liability to the Receiving Party or any of its Representatives relating to or arising from its or their use of any Confidential Information or for any errors therein or omissions therefrom. The Receiving Party also agrees that it is not entitled to rely on the accuracy or completeness of any Confidential Information. The Receiving Party acknowledges and agrees that the Confidential Information is being provided solely for the purpose of assisting its independent evaluation and analysis of the Disclosing Party and its assets.

12. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT OR LAW TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS DUE TO BUSINESS INTERRUPTIONS OR OTHERWISE, IN CONNECTION WITH THIS AGREEMENT.

13. In the event of litigation relating to this Agreement, the non-prevailing Party as finally determined by a court of competent jurisdiction shall be liable and pay to the other Party all reasonable costs incurred by such other Party in connection therewith, including, but not limited to, reasonable attorneys' fees incurred by such other Party in connection with such litigation, including any appeal therefrom.

14. It is further understood and agreed that no failure or delay by the Disclosing Party in exercising or pursuing any right, power, privilege or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise or pursuit thereof preclude any other or further exercise or pursuit thereof or the exercise or pursuit of any other right, power, privilege or remedy hereunder.

15. This Agreement shall be effective as of the date on the signature page (the "Effective Date") and expire on the fifth anniversary thereof. This Agreement may not be amended, modified, superseded or cancelled, nor may any of the terms, covenants, representations, warranties or conditions hereof be waived, except by a written instrument executed by the parties.

16. If any provision of this Agreement becomes or is found to be illegal or unenforceable for any reason, such clause or provision must first be modified to the extent necessary to make this Agreement legal and enforceable and then if necessary, second, severed from the remainder of the Agreement to allow the remainder of the Agreement to remain in full force and effect.

17. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

IN WITNESS WHEREOF, the Parties have executed this Agreement effective the date stated above.

| **DEVELOPER:** | **PARTNER:** |
|---|---|
| Business Name: McCandless Group, LLC | Business Name: Jessica Bartlett |
| Address: 127 Bowery, Irvine, CA 92612 | Address: 404 Cool Valley Dr, Paso Robles, CA 93446 |
| Telephone Number: 919-791-6441 | Telephone Number: 805-835-8052 |
| Email Address: nick@nickmccandless.com | Email Address: jessicambartlett1@gmail.com |
| By: *Nicholas McCandless* (DocuSigned, CC0CECA0BA5C475...)<br>Signature | By: *Jessica Bartlett* (DocuSigned, 15862633FAD24C0...)<br>Signature |
| Full Name: Nicholas McCandless<br>Title: CEO/Owner/Founder | Full Name: Jessica Bartlett |
| Date: 5/21/2020 | Date: 5/21/2020 |

5