1   COLIN H. ROLFS (State Bar No. 280654)
    crolfs@millerbarondess.com
2   MILLER BARONDESS, LLP
    2121 Avenue of the Stars, 26TH Floor
3   Los Angeles, California 90067
    Telephone: (310) 552-4400
4   Facsimile: (310) 552-8400

5   Attorneys for Defendants and
    Counterclaimants
6   THE COY COLLECTIVE, INC,
    JESSICA BARTLETT, COREY LEWIS,
7   ROBERT HANKINS, and THOMAS
    DREW

8

9                    **UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  MCCANDLESS GROUP, LLC,                **CASE NO. 2:21-cv-02069-DOC-KES**

            Plaintiff,                    **DEFENDANTS AND**
13                                        **COUNTERCLAIMANTS**
            v.                            **THE COY COLLECTIVE, INC,**
14                                        **JESSICA BARTLETT, COREY**
    THE COY COLLECTIVE, et al.,           **LEWIS, ROBERT HANKINS, AND**
15                                        **THOMAS DREW'S STATEMENT**
            Defendants.                   **OF UNCONTROVERTED FACTS**
16                                        **AND CONCLUSIONS OF LAW IN**
    _____   **SUPPORT OF THEIR MOTION**
17  THE COY COLLECTIVE, et al.,           **FOR SUMMARY JUDGEMENT**

18          Counterclaimants,             Date:   Monday  October 2. 2023
                                          Time:   8:30 a.m.
19          v.                            Place:  Courtroom 10A

20  MCCANDLESS GROUP, LLC and             The Hon. David O. Carter
    NICHOLAS MCCANDLESS,                  and Magistrate Judge Karen E. Scott
21
            Counterdefendants.            Complaint Filed:    March 8, 2021
22                                        Discovery Cut-Off:  August 28, 2023
                                          Motion Cut-Off:     October 2, 2023
23                                        Trial:              November 7, 2023

24

25

26            **[UNREDACTED VERSION OF DOCUMENT PROPOSED**
                  **TO BE FILED UNDER SEAL]**
27

28

634282.2

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGEMENT

*MILLER BARONDESS, LLP*
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX (310) 552-8400

This Statement of Uncontroverted Facts is submitted by Defendants and Counterclaimants The Coy Collective, Inc, Jessica Bartlett, Corey Lewis, Robert Hankins, and Thomas Drew in support of their Motion for Summary Judgment.

## STATEMENT OF UNCONTROVERTED FACTS

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. The "creator economy" consists of independent content creators—e.g., influencers, models, podcasters, and streamers—who distribute and monetize content on the internet.<br><br>*Evidence*: Declaration of Jesscia Bartlett ("Bartlett Decl.") ¶ 2. | |
| 2. OnlyFans and Patreon are two of the largest companies in the creator economy space.<br><br>*Evidence*: Bartlett Decl. ¶ 3. | |
| 3. OnlyFans is a service launched in 2016 that allows creators to sell subscription content.<br><br>*Evidence*: Bartlett Decl. ¶ 3. | |
| 4. A creator can set up an OnlyFans page to sell content to subscribers, receive "tips," chat with subscribers, and view reporting on the financial performance of the page.<br><br>*Evidence*: Bartlett Decl. ¶ 3. | |
| 5. McCandless Group, LLC ("MG") is a company started by Nicholas McCandless ("McCandless").<br><br>*Evidence*: Dkt. 89 (Third Amended | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400  FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Complaint) ¶ 16. | |
| 6.    MG sites have similar functionality to OnlyFans—subscription content, tipping, chat, and financial reporting. *Evidence*: Bartlett Decl. ¶ 6. | |
| 7.    MG claims in pitching potential clients, "You also own your subscribers, data and all of your content." *Evidence*: Declaration of Colin Rolfs ("Rolfs Decl."), Ex. H. | |
| 8.    MG claims in pitching potential clients, "You have complete access to your subscriber information including name, email, and revenue received." 9.    *Evidence*: Declaration of Colin Rolfs, Ex. I at MCCANDLESS008981. | |
| 10.   Bartlett is a social media personality and model. *Evidence*: Bartlett Decl. ¶ 4. | |
| 11.   Around 2019, McCandless convinced Bartlett to hire MG to develop a subscription website for her. *Evidence*: Bartlett Decl. ¶¶ 5, 7. | |
| 12.   On October 27, 2019, Bartlett and MG executed a Web Development Agreement (the "Bartlett WDA"). *Evidence*: Bartlett Decl. ¶ 7, Ex. U. | |

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 13.     Because of Bartlett's popularity, McCandless used her to market his services.<br><br>*Evidence*: Rolfs Decl., Exs. G, H; Bartlett Decl. ¶ 8. | |
| 14.     In February of 2020, McCandless provided a content manager- or creator-level login to Bartlett's site to someone helping her manage the site.<br><br>*Evidence*: Rolfs Decl., Ex. A at 82:25-84:23, Exs. S, T. | |
| 15.     Creator-level access to an MG website has the ability to post content, manage chat, and see the financial earnings report.<br><br>*Evidence*: Rolfs Decl., Ex. A at 84:25-85:8. | |
| 16.     Content manager-level access to an MG website can post content and manage chat, but does not have access to earnings reporting.<br><br>*Evidence*: Rolfs Decl., Ex. A at 84:25-85:13. | |
| 17.     McCandless did not require the person helping Bartlett manage her site to sign a non-disclosure agreement before providing the login.<br><br>*Evidence*: Rolfs Decl., Ex. A at 85:14-16, Exs. S, T. | |
| 18.     In 2020, Bartlett, Corey Lewis ("Lewis"), and Thomas Drew ("Drew") co-founded COY—a technology | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| company allowing its creator clients to offer subscription content to their followers.<br><br>*Evidence*: Bartlett Decl. ¶¶ 9, 10; Declaration of Corey Lewis ("Lewis Decl.") ¶¶ 2, 3; Declaration of Thomas Drew ("Drew Decl.") ¶¶ 2, 3. | |
| 19.   Bartlett, Drew, and Lewis conceptualized COY as a more "selective" OnyFans—they would hand-pick influencers and offer them additional services like photo-shoots.<br><br>*Evidence*: Bartlett Decl. ¶ 11; Lewis Decl. ¶ 4; Drew Decl. ¶ 4. | |
| 20.   Bartlett, Drew, and Lewis vetted different options for building COY's subscription platform, including hiring MG as a developer, hiring Segwik as a developer, or using a platform called Uscreen.<br><br>*Evidence*: Bartlett Decl. ¶ 12; Lewis Decl. ¶ 5; Drew Decl. ¶ 5. | |
| 21.   COY ultimately hired MG to develop COY's subscription platform.<br><br>*Evidence*: Bartlett Decl. ¶ 22; Lewis Decl. ¶ 15; Drew Decl. ¶ 10. | |
| 22.   When COY selected MG as its developer, everyone at COY was excited to work with MG.<br><br>*Evidence*: Bartlett Decl. ¶ 23; Lewis Decl. ¶ 17; Drew Decl. ¶ 11. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 23. The suggestion to use Uscreen came from Robert Hankins ("Hankins"), a photographer and friend of Drew and Lewis. *Evidence*: Declaration of Robert Hankins ("Hankins Decl.") ¶¶ 2, 3. | |
| 24. Hankins proposed joining COY to manage COY's Uscreen relationship. *Evidence*: Hankins Decl. ¶ 3. | |
| 25. Hankins was only involved with COY in the summer of 2020, because shortly after COY decided not to use Uscreen, Hankins had no further involvement with COY. *Evidence*: Hankins Decl. ¶ 4. | |
| 26. On May 6, 2020, Bartlett texted McCandless to ask if he would be interested in being COY's developer: "Hey Nick! Working on a subscription based project with a couple investors and pitching you as our developer." *Evidence*: Bartlett Decl. ¶ 13, Ex. A. | |
| 27. On May 9, 2020, Bartlett set up a call with McCandless and Lewis to discuss the subscription based project. *Evidence*: Bartlett Decl. ¶ 14, Ex. B. | |
| 28. Bartlett's May 9, 2020 message to McCandless notified him that she and Lewis were collecting information for an investor pitch: "Preparing an investor pitch for the company I was telling you a | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| little about. Do you have time today for a call with me and my main business guy?" | |
| *Evidence*: Bartlett Decl., Ex. B at COY003282. | |
| 29.    On May 10, 2020, Bartlett asked McCandless to provide Lewis with a login to her site, so Lewis could see the user experience. | |
| *Evidence*: Bartlett Decl. ¶ 15, Ex. C. | |
| 30.    McCandless offered to provide either a content manager or subscriber login for Lewis, and Bartlett asked for a subscriber login. | |
| *Evidence*: Bartlett Decl. ¶ 15, Ex. C. | |
| 31.    McCandless provided the subscriber login the next day, May 11, 2020. | |
| *Evidence*: *Evidence*: Bartlett Decl. ¶ 16, Ex. D; Rolfs Decl., Ex. A at 79:19-81:5, Ex. B. | |
| 32.    On May 12, 2020, McCandless proposed some terms for MG to serve as COY's developer. | |
| *Evidence*: Bartlett Decl. ¶ 17, Ex. E. | |
| 33.    The terms proposed by McCandless included that "McCandless Group would be marketed as the Technology Partner powering your technology" and that MG would retain "the code/technology" while COY would | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| "own all of the content and the relationships with the models."<br><br>*Evidence*: Bartlett Decl., Ex. E. | |
| 34.   On May 13, 2020, Bartlett messaged McCandless: "Got it! Thank you! I'll talk this over with Corey and the other investors in the morning."<br><br>*Evidence*: Bartlett Decl. ¶ 18, Ex. F. | |
| 35.   On May 14, 2020, Bartlett set up a call with McCandless and Lewis to discuss the proposal.<br><br>*Evidence*: Bartlett Decl. ¶ 19, Ex. G. | |
| 36.   On May 16, 2023, McCandless had an over 2-hour call with Lewis.<br><br>*Evidence*: Lewis Decl. ¶ 7, Ex. A. | |
| 37.   McCandless disclosed what he contends are "trade secrets" about his payment processing on this call, prior to any non-disclosure agreement.<br><br>*Evidence*: Rolfs Decl. Ex. A at 69:21-72:21, 73:21-74:3, Ex. C, Response to Interrogatory No. 6. | |
| 38.   On May 19, 2020, McCandless sent Lewis estimated upkeep costs for hosting and email services.<br><br>*Evidence*: Lewis Decl. ¶ 8, Ex. B. | |
| 39.   On May 19, 2020, Drew sent McCandless a detailed list of requirements for the COY sites. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

634282.2

8

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Drew Decl. ¶ 6, Ex. A. | |
| 40.    On May 20, 2020, McCandless sent non-disclosure agreements ("NDAs") to Bartlett, Lewis, and Drew.<br><br>*Evidence*: Bartlett Decl. ¶ 20, Ex. H; Rolfs Decl., Ex. A at 74:23-25, Ex. D; Lewis Decl. ¶ 9; Drew Decl. ¶ 7, Ex. B. | |
| 41.    Bartlett, Lewis, and Drew each signed an NDA on May 21.<br><br>*Evidence*: Bartlett Decl. ¶ 21, Ex. I; Lewis Decl. ¶ 10, Ex. C; Drew Decl. ¶ 8, Ex. C. | |
| 42.    Hankins also signed an NDA on May 22, 2020.<br><br>*Evidence*: Hankins Decl. ¶ 5, Exs. A, B. | |
| 43.    The NDAs that Bartlett, Lewis, Drew, and Hankins signed are governed by California law.<br><br>*Evidence*: Bartlett Decl., Ex. J § 17; Lewis Decl., Ex. D § 17; Drew Decl., Ex. D § 17; Hankins Decl., Ex. B § 17. | |
| 44.    On May 23, 2020, after the NDAs were signed, McCandless sent Lewis a document entitled, "McCandless Group Model Platform Technology Stack."<br><br>*Evidence*: Lewis Decl. ¶ 11, Ex. E. | |
| 45.    The documents listed the names of the technologies used by MG for its websites.<br><br>*Evidence*: Lewis Decl. ¶ 11, Ex. E. | |

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 46.   The document did not disclose any source code.<br><br>*Evidence*: Lewis Decl. ¶ 11, Ex. E. | |
| 47.   At no point has COY ever had access to MG's source code.<br><br>*Evidence*: Bartlett Decl., ¶ 28; Lewis Decl. ¶ 12; Drew Decl. ¶ 12; Rolfs Decl., Ex. A at 28:11-29:13, Ex. Q. | |
| 48.   On May 27, 2020, Lewis sent the technology stack document provided by McCandless to the manager of COY's principal investor, Andrew Geller ("Geller").<br><br>*Evidence*: Lewis Decl. ¶ 13, Ex. F. | |
| 49.   Geller was the manager of COY's principal investor and was advising COY on its business, including whether to retain MG as COY's developer.<br><br>*Evidence*: Lewis Decl. ¶ 14. | |
| 50.   Bartlett had informed McCandless that COY was collecting information to share with its investors for purposes of deciding whether to retain MG.<br><br>*Evidence*: Bartlett Decl. ¶ 23, Exs. A, B, F. | |
| 51.   Section 4 of Lewis' NDA permits disclosure of Confidential Information to "Representatives who are actively and directly participating in the evaluation and negotiation of the Proposed Transaction." | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Lewis Decl., Ex. D § 4. | |
| 52.     Section 3 of Lewis' NDA defines "Representative" to include "advisors." <br><br> *Evidence*: Lewis Decl., Ex. D § 3. | |
| 53.     The only other person Lewis sent the document to was Drew. <br><br> *Evidence*: Drew Decl. ¶ 9, Ex. D. | |
| 54.     Drew never sent the document to anyone else. <br><br> *Evidence*: Drew Decl. ¶ 9. | |
| 55.     COY and MG continued to negotiate pricing and terms for MG to serve as COY's developer in June and July 2020. <br><br> *Evidence*: Bartlett Decl. ¶ 24, Ex. K; Lewis Decl. ¶ 16, Ex. G. | |
| 56.     On August 6, 2023, COY's designer, Maria Deligiorgio, provided designs for the COY websites to MG. <br><br> *Evidence*: Bartlett Decl. ¶ 25, Ex. L. | |
| 57.     MG subsequently copied these designs for its own sites, without permission. <br><br> *Evidence*: Rolfs Decl., Ex. A at 120:10-123:19, Ex. E; Bartlett Decl. ¶ 26. | |
| 58.     On August 6, COY and MG entered into a Web Development Agreement (the "COY WDA"). <br><br> *Evidence*: Bartlett Decl. ¶ 27, Ex. M. | |

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 59.    Bartlett, Lewis, and Drew intended for COY to abide by the terms of the COY WDA; they had no intent to "steal" any of MG's technology.<br><br>*Evidence*: Bartlett Decl. ¶ 27; Lewis Decl. ¶ 17; Drew Decl. ¶ 11. | |
| 60.    The COY WDA states that MG would serve as the developer for COY's subscription websites.<br><br>*Evidence*: Bartlett Decl., Ex. M recital, §§ 1.1(a), 1.2. | |
| 61.    The COY WDA provides that COY "wishes to utilize the services of Developer in connection with the development of software identified as the Coy Collective, INC Websites."<br><br>*Evidence*: Bartlett Decl., Ex. M recital. | |
| 62.    The COY WDA provides that COY wanted to recruit models and have MG build websites for them.<br><br>*Evidence*: Bartlett Decl., Ex. M recital, §§ 1.1, 1.2. | |
| 63.    Section 4 of the COY WDA provides, in part, "[t]he Developer is and shall remain an independent contractor of the Customer and nothing contained in this Agreement shall be deemed to create an employer/employee, principal/agent, partnership or joint venture relationship between the parties."<br><br>*Evidence*: Bartlett Decl., Ex. M § 4. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 64.    McCandless contends that the "partnership" he is referring to in his allegations was documented at least in part by the COY WDA:<br><br>"I'm asking if you put the terms of the partnership you're referring to into the web development agreement?<br><br>THE WITNESS: There was terms involved with the partnership in the web development agreement."<br><br>*Evidence*: Rolfs Decl., Ex. A at 202:20-203:1. | |
| 65.    McCandless testified to the following at his deposition:<br><br>"Q: Would you ever enter into a partnership without a signed agreement?<br><br>A: We would have some contract in place."<br><br>*Evidence*: Rolfs Decl., Ex. A at 200:9-14. | |
| 66.    McCandless admitted to using the term "partner" as a casual shorthand for a vendor relationship.<br><br>*Evidence*: Rolfs Decl., Ex. A at 98:21-101-4, Ex. U. | |
| 67.    Section 6.1 of the COY WDA provides: "Except as may be otherwise granted herein, title to and ownership of all intellectual property rights including, without limitation, any patent, trademark, copyright or intellectual or industrial property right (the "Developer | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Intellectual Property") relating to the Software shall at all times remain with Developer." *Evidence*: Bartlett Decl., Ex. M § 6.1. | |
| 68.   The COY WDA does not define the term "Software." *Evidence*: Bartlett Decl., Ex. M. | |
| 69.   COY has never claimed ownership over any of MG's intellectual property covered by the COY WDA. *Evidence*: Bartlett Decl. ¶ 27. | |
| 70.   The COY WDA defines "Confidential Information" as information "designated or described by the disclosing party as 'Confidential,' 'Proprietary' or some similar designation, or which should reasonably be understood by the receiving party, because of the circumstances of disclosure or the nature of the information itself to be confidential or proprietary to the disclosing party." *Evidence*: Bartlett Decl., Ex. M § 5.1. | |
| 71.   The COY WDA specifically excludes from the definition of "Confidential Information": "[A]ny information which (i) is publicly known through no action or inaction of the receiving party; (ii) was already in the possession of the receiving party at the time of disclosure without an obligation of confidentiality, direct or | |

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| indirect, to the disclosing party; (iii) is obtained by the receiving party from an independent third party without a breach of such third party's obligations of confidentiality; or (iv) is independently developed by the receiving party without use of or reference to materials provided by the disclosing party." *Evidence*: Bartlett Decl., Ex. M § 5.1. | |
| 72.     Section 13a. of the COY WDA provides, in part, "This Agreement sets forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof, and, except as otherwise specifically provided below, supersedes all prior and contemporaneous correspondence, agreements, arrangements and understandings, both oral and written, between the parties hereto concerning the subject matter hereof." *Evidence*: Bartlett Decl., Ex. M § 13(a). | |
| 73.     COY's website described COY as "a full service technology company." *Evidence*: Rolfs Decl., Ex. K. | |
| 74.     On August 31, 2020, Bartlett sent McCandless an email that included the language COY wanted on its website, including that COY was "a full service technology company." *Evidence*: Rolfs Decl., Ex. K. | |
| 75.     McCandless never reached out to anyone at COY to ask why COY was | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| describing itself as "a full service technology company."<br><br>*Evidence*: Rolfs Decl., Ex. A at 113:18-114:20. | |
| 76.    In August 2020, Bartlett and MG agreed that her and one other model's site would transfer to COY, except that COY would pay MG a minimum amount for these two specific sites.<br><br>*Evidence*: Bartlett Decl. ¶ 29, Ex. N. | |
| 77.    On September 7, 2020, McCandless emailed Bartlett to confirm that the Bartlett WDA had terminated:<br><br>"[A]s of September 1, 2020 any and all financial responsibilities that McCandless Group, LLC committed to in our Website Development Agreement are no longer the responsibility of McCandless Group, LLC."<br><br>*Evidence*: Bartlett Decl. ¶ 30, Ex. O. | |
| 78.    COY successfully recruited thirteen models and asked MG to build their websites.<br><br>*Evidence*: Bartlett Decl. ¶ 31. | |
| 79.    By October 2020, friction had emerged between COY and MG.<br><br>*Evidence*: Bartlett Decl. ¶ 32. | |
| 80.    MG had difficulty launching a number of sites for COY on time, frustrating COY. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Bartlett Decl. ¶ 32. | |
| 81.    McCandless began to view COY as competing with MG in recruiting models.<br><br>*Evidence*: Bartlett Decl. ¶ 33, Ex. P. | |
| 82.    On October 19, 2020, McCandless texted Bartlett to tell her MG would refuse to build a website for a model, Mikayla Demaiter ("Demaiter"), because MG "had active conversations with" her.<br><br>*Evidence*: Bartlett Decl. ¶ 34, Ex. Q. | |
| 83.    McCandless had been pitching Demaiter up until July 30, 2020, after which she stopped responding to him.<br><br>*Evidence*: Rolfs Decl., A at 149:9-151:1; Rolfs Decl., Ex. J. | |
| 84.    In October 2020, COY reached out to Dionna McPhatter ("McPhatter") about building new sites for COY's clients.<br><br>*Evidence*: Bartlett Decl. ¶ 35. | |
| 85.    *Blank – No Response Required* | |
| 86.    *Blank – No Response Required* | |
| 87.    *Blank – No Response Required* | |
| 88.    *Blank – No Response Required* | |
| 89.    McPhatter was not provided with MG's tech stack document.<br><br>*Evidence*: Bartlett Decl. ¶ 35. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 90.     COY ultimately decided not to replace MG with McPhatter.<br><br>*Evidence*: Bartlett Decl. ¶ 36. | |
| 91.     Jason Moskowitz ("Moskowitz") is McCandless' business partner.<br><br>*Evidence*: Rolfs Decl., Ex. A at 200:2-7. | |
| 92.     On November 2, 2020, Moskowitz sent a letter to COY demanding significant changes to the terms of the COY WDA as a condition of continuing, stating MG would otherwise shut down all COY sites on December 31, 2020.<br><br>*Evidence*: Bartlett Decl. ¶ 37, Ex. R. | |
| 93.     The letter concluded, "[i]f the result is that you can't accept this and need to move in another direction—perhaps even becoming our competitor—we are fully aware of that and will be helpful during this transition."<br><br>*Evidence*: Bartlett Decl., Ex. R. | |
| 94.     On November 3, 2020, Bartlett notified Moskowitz that COY was not interested in the changed terms so "would be taking the option in which sites are terminated on Dec. 31st."<br><br>*Evidence*: Bartlett Decl. ¶ 38, Ex. S. | |
| 95.     On November 9, 2020 Moskowitz sent COY another letter.<br><br>*Evidence*: Bartlett Decl. ¶ 39, Ex. T. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 96.    Moskowitz's November 9 letter notified COY that MG was refusing to transfer the domains of most of COY's clients to COY.<br><br>*Evidence*: Bartlett Decl., Ex. T. | |
| 97.    Before Moskowitz sent the letter, McCandless explained to him the reasons for withholding the domains:<br><br>"Yep, I have done many things like this to lock people in without them even knowing it so can definitely use this as leverage since I own and control all of their domains except for a couple that the models already owned."<br><br>*Evidence*: Rolfs Decl., Ex. A at 106:23-107:10, Ex. L. | |
| 98.    MG retained most of the domains to the websites it built for COY, despite having no use for them.<br><br>*Evidence*: Rolfs Decl., Ex. A at 111:2-19, 112:5-113:2. | |
| 99.    The payment processing account for COY's websites stored subscriber information and allowed for recurring subscription charges.<br><br>*Evidence*: Bartlett Decl. ¶ 40. | |
| 100.   Section 8.2 of the COY WDA states, "Customer will establish an account for payment processing with the payment processor assigned to Customer by Developer." | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Bartlett Decl., Ex. M § 8.2. | |
| 101.   McCandless had set up an account with the payment processing company—CCBill—in MG's name. *Evidence*: Bartlett Decl. ¶ 49, Ex. T. | |
| 102.   McCandless refused to turn over the account to COY or transfer any of the subscribers. *Evidence*: Bartlett Decl. ¶ 40, Ex. T. | |
| 103.   McCandless intended to deny COY its subscriber data. *Evidence*: Rolfs Decl., Ex. A at 129:23-130:8. | |
| 104.   McCandless checked with CCBill prior to attempting to change the terms of the WDA, to confirm CCBill would let him withhold subscriber data from COY. *Evidence*: Rolfs Decl., Ex. A at 131:10-134:13, 138:2-9; Rolfs Decl. Ex. F. | |
| 105.   Because of MG's withholding of internet domains and subscriber information, COY could not relaunch its websites using the same domains or maintain the existing subscribers to its creators' websites. *Evidence*: Bartlett Decl. ¶ 41. | |
| 106.   MG kept Bartlett's site running after the COY WDA was terminated until approximately February 2021. *Evidence*: Rolfs Decl., Ex. A at 111:7-15. | |

634282.2

20

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 107.   McCandless admitted that MG had no contract in place with Bartlett after February 2021:<br><br>"Q.  After approximately February of 2021, was McCandless Group required by any contract to operate a website for Jessica Bartlett?<br><br>A.  It was not required of us."<br><br>*Evidence*: Rolfs Decl., Ex. A at 152:23-153:1. | |
| 108.   COY was forced to hire a new developer to rebuild its creators' websites—Segwik.<br><br>*Evidence*: Bartlett Decl. ¶ 42. | |
| 109.   In late 2020, COY retained Segwik to build websites for its clients to sell subscription content.<br><br>*Evidence*: Declaration of Pete Romano ("Romano Decl.") ¶ 2. | |
| 110.   COY instructed Segwik to build sites with the basic functionality of OnlyFans<br><br>*Evidence*: Romano Decl. ¶ 2. | |
| 111.   Segwik was never provided with a document describing the technology stack for the websites built by MG.<br><br>*Evidence*: Romano Decl. ¶ 3. | |
| 112.   No one from COY described MG's tech stack to Segwik orally or in writing. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

634282.2

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Romano Decl. ¶ 3. | |
| 113.   Segwik did not have or use any technical information about MG's websites in building websites for COY's clients.<br><br>*Evidence*: Romano Decl. ¶ 3. | |
| 114.   The only data that Segwik obtained from the prior MG websites was COY's clients' data—*i.e.*, identities and emails of the clients' subscribers, clients' chat history, and clients' photos and videos.<br><br>*Evidence*: Romano Decl. ¶ 7. | |
| 115.   COY's clients' data belonged to COY.<br><br>*Evidence*: Bartlett Decl., Ex. E, Ex. M §§ 1.2(f), 6.1, 6.3, 7. | |
| 116.   As McCandless had told COY, MG would own "the code/technology" but COY would "own all of the content."<br><br>*Evidence*: Bartlett Decl., Ex. E. | |
| 117.   Segwik had an existing technology platform which it had developed before being retained by COY; it uses this platform for multiple clients, and it used this platform to build sites for COY's clients.<br><br>*Evidence*: Romano Decl. ¶¶ 4, 7. | |
| 118.   Because it already had an existing platform, Segwik had to build only a few elements of these websites, which it did | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| without any knowledge of MG's tech stack. *Evidence*: Romano Decl. ¶¶ 3, 5. | |
| 119.   Segwik's build used Angular rather than React for front end architecture and RDS rather than MongoDB for database architecture. *Evidence*: Romano Decl. ¶ 5. | |
| 120.   For payment processing, COY set up a new account with CCBill. *Evidence*: Bartlett Decl. ¶ 43. | |
| 121.   COY hired third parties—first Slashed Content and then Be Safe Management—to provide DMCA take down services. *Evidence*: Bartlett Decl. ¶ 44. | |
| 122.   COY never asked these companies to provide anything other than their standard services. *Evidence*: Bartlett Decl. ¶ 43. | |
| 123.   COY ultimately did not succeed in relaunching its websites, shutting them all down before the end of 2021. *Evidence*: Declaration of Matt Silk ("Silk Decl.") ¶ 2. | |
| 124.   After MG terminated the COY WDA, COY never made a profit from its subscription website business, losing over $300,000 in 2021. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Silk Decl. ¶ 3, Exs. A & B. | |
| 125.    After 2021, COY's subscription website business had been shut down, and COY had no revenue.<br><br>*Evidence*: Silk Decl. ¶ 3, Exs. A & B. | |
| 126.    After MG terminated the relationship with COY, COY never competed with MG to sign any new models.<br><br>*Evidence*: Bartlett Decl. ¶ 45. | |
| 127.    After the termination, COY was focused on servicing its existing clients under contract.<br><br>*Evidence*: Bartlett Decl. ¶ 45. | |
| 128.    COY signed up only one new model after the termination, and that model was never a potential MG client.<br><br>*Evidence*: Bartlett Decl. ¶ 45. | |
| 129.    COY never distributed any profits or paid any salary to Lewis, Drew, or Bartlett.<br><br>*Evidence*: Bartlett Decl. ¶ 46; Lewis Decl. ¶ 20; Drew Decl. ¶ 15. | |
| 130.    MG's profits grew by $1.5 million the year after it terminated the COY WDA.<br><br>*Evidence*: Rolfs Decl., Ex. Y. | |
| 131.    Defendants asked MG to identify its trade secrets in discovery. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Rolfs Decl., Ex. C, Interrogatory No. 1. | |
| 132.   MG contends that its "technology stack" is a trade secret:<br><br>"The 'technology stack' consists of utilizing servers node.js with express and MongoDB Database, react with redux, FFmpeg to transcode and process videos, TinyPNG to compress images, S3 for storing data, CloudFront to serve private content securely, Nginx to reverse proxy and static server react builds, Socket io for chat, CCBill for payment processing, hosting services through Amazon AWS EC2 instances, S3 to store media files, Amazon Route 53, and AWS CloudWatch to monitor server resource utilization.<br><br>Further, the technology allows users to handle and manage data. Website settings are stored on MongoDB which decides theme and other options. Users can register and then subscribe to view exclusive content. Active subscribers can also engage in chat with the models. Subscribers can update profile settings and manage their subscription access. Subscribers can tip and purchase locked content on the model's exclusive content feed and in private chat. The technology stack includes security and privacy protection, meaning that only users with a specific role can access the data with the correct JWT token. API routes are also protected based on user roles. Uploaded content is stored on S3 with a | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| unique id and the content is served with a signed url with CloudFront.<br><br>Sites are built for scalability. Specifically, sites are hosted across infinitely scalable AWS server instances to allow for no limitations of traffic, bandwidth, and activity. Databases are hosted across MongoDB databases that are built for infinite scalability. Dedicated server instances for video transcoding and processing services that websites leverage for videos. Image processing is carried out by the same node.js instance which is responsible for the API. This scalability gives the capacity to launch over 200 websites a week."<br><br>*Evidence*: Rolfs Decl., Ex. C, Response to Interrogatory No. 1. | |
| 133.   The core of this stack is a common "MERN" stack—**M**ongoDB, **E**xpress, **R**eact, **N**ode.<br><br>*Evidence*: Declaration of Sarah Bostwick ("Bostwick Decl.") ¶ 5. | |
| 134.   This build is publicly described on MongoDB's website.<br><br>*Evidence*: Rolfs Decl., Ex. BB. | |
| 135.   The remainder of the stack consists of popular third-party services for hosting, image compression, and video encoding, all of which are publicly advertised by the relevant third-parties. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Bostwick Decl. ¶¶ 17-21, 35, 36; Rolfs Decl., Exs. BB-OO. | |
| 136.   MG's tech stack is a common, generally known build.<br><br>*Evidence*: Bostwick Decl. ¶ 60; Rolfs Decl., Exs. BB-OO. | |
| 137.   McCandless disclosed substantial portions of MG's tech stack in MG's pitch decks.<br><br>*Evidence*: Rolfs Decl., Ex. A at 44:15-46:17, 48:5-11; 53:18-56:4, 65:5-18, Ex. M at McCandless006982, Ex. N at McCandless009964, McCandless009969. | |
| 138.   McCandless does not recall ever asking anyone to sign a non-disclosure agreement before seeing MG's pitch deck.<br><br>*Evidence*: Rolfs Decl., Ex. A at 65:12-65:18. | |
| 139.   MG's technology stack was built by a third-party developer in India—Rayo Infotech ("Rayo").<br><br>*Evidence*: Rolfs Decl., Ex. A at 31:20-25. | |
| 140.   McCandless does not have a non-disclosure agreement covering this stack.<br><br>*Evidence*: Rolfs Decl., Exs. Q, X; *id.*, Ex. P Response to Interrogatory No. 1. | |
| 141.   MG's agreement with Rayo covers only information that MG shares with Rayo (not the other way around): | |

634282.2

27

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| "'McCandless Group, LLC' in its sole discretion may provide to Contractor certain 'Proprietary Information.'"<br><br>*Evidence*: Rolfs Decl., Ex. X § 1. | |
| 142.   The final component of MG's tech stack is CCBill, a payment processor.<br><br>*Evidence*: Rolfs Decl., Ex. C Response to Interrogatory No. 1. | |
| 143.   OnlyFans also uses CCBill.<br><br>*Evidence*: Bartlett Decl. ¶ 43. | |
| 144.   Anyone who visited an MG site could determine that MG used CCBill.<br><br>*Evidence*: Rolfs Decl., Ex. A at 68:25-69:5, 206:14-24, Ex. W. | |
| 145.   Anyone who visited an MG site could determine the features offered by the website to subscribers.<br><br>*Evidence*: Rolfs Decl., Ex. A at 65:20-67:13, Exs. V, W. | |
| 146.   McCandless disclosed his alleged "trade secrets" regarding payment processing to Lewis on May 16, 2020, prior to Lewis executing a non-disclosure agreement.<br><br>*Evidence*: Rolfs Decl., Ex. A at 72:3-73:2, 73:25-74:8, 74:23-75:8, Ex. C Response to Interrogatory No. 6, Ex. D. | |
| 147.   This call was over two hours. | |

634282.2

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Lewis Decl. ¶ 8, Ex. A. | |
| 148.   MG contends that its trade secrets include a "dynamic watermarking feature" and "DMCA practices:" <br><br> "Additionally, the technology stack includes our dynamic watermarking feature. The watermarking feature assigns a unique watermark to each user address when visiting or viewing a piece of content. That way, if content is leaked, it is leaked with the unique watermark, allowing us to identify the account associated with the link and restrict that account's access moving forward. Once identified, DMCA practices are used to enforce the Copyright and have leaked content removed from other sites." <br><br> *Evidence*: Rolfs Decl., Ex. A at 54:2-9, Ex. C Response to Interrogatory No. 1. | |
| 149.   Watermarking is a common, well-known practice. <br><br> *Evidence*: Bostwick Decl. ¶ 34. | |
| 150.   MG never disclosed to COY any code for its watermarking. <br><br> *Evidence*: Rolfs Decl., Ex. A at 28:11-29:13; Bartlett Decl. ¶ 28; Lewis Decl. ¶ 12; Drew Decl. ¶ 12. | |
| 151.   MG's watermarking practices were disclosed in MG's pitch deck, which he shares without requiring non-disclosure agreements. <br><br> *Evidence*: Rolfs Decl., Ex. A at 52:22-25, 54:11-16, Ex. N MCCANDLESS009969. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 152.   MG's DMCA practices consist of using Google to search for infringing images and then submitting takedown requests.<br><br>*Evidence*: Rolfs Decl., Ex. A at 55:13-56:4, 85:17-87:7. | |
| 153.   MG discloses that it offers DMCA services in its pitch deck.<br><br>*Evidence*: Rolfs Decl., Ex. A at 55:6-17, Ex. N MCCANDLESS009969. | |
| 154.   MG contends that its trade secrets include "pricing for potential clients":<br><br>"Defendants also misappropriated McCandless Group's costs and accounting their social media accounts, how long their audience has been following them, and any niches that potential clients may have beyond their physical appearance. Utilizing these factors, we attempt to identify an appropriate revenue sharing proposal structure. This includes identification and pricing for potential clients, which is based on factors such as number of followers, engagement on social media posts, age of their social media accounts, how long their audience has been following them, and any niches that potential clients may have beyond their physical appearance.  Utilizing these factors, we attempt to identify an appropriate revenue sharing proposal." | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Rolfs Decl., Ex. C Response to Interrogatory No. 1. | |
| 155.   McCandless admitted that his process for deciding pricing for potential clients consists of reviewing how popular a potential client is on social media and then making a "judgement call" about what revenue split to offer.<br><br>*Evidence*: Rolfs Decl., Ex. A at 93:17-96:24. | |
| 156.   McCandless discloses his revenue split offers to potential clients without requiring a non-disclosure agreement.<br><br>*Evidence*: Rolfs Decl., Ex. A at 97:9-98:13, Ex. G. | |
| 157.   MG also contends various basic accounting procedures are "trade secrets":<br><br>"Additionally, costs associated with launching a website often varies. For McCandless Group, our technology stack and streamlined technology makes the launch process extremely efficient and cost effective. Additional costs include servers and hosting, which are based on traffic to the site, payment processing fees, and emails. Further, McCandless Group's revenue model, which is dependent on the revenue sharing agreement, and calculated by utilizing the gross revenue, subtracting the combined 6.95% payment processing fee, subtracting the total of chargebacks and refunds, and then paying the client based on the agreed upon percentage of | |

634282.2

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| revenue." <br><br> *Evidence*: Rolfs Decl., Ex. C Response to Interrogatory No. 1. | |
| 158.  MG also contends he has developed a system to "clearly lay[] out the amount of money owed to each client" and then pay those clients via PayPal: <br><br> "Further, McCandless group built a system for handling collection, calculations, and processing of payments for hundreds of clients. Each client had a subaccount using CCBill to easily organize the revenue generated from each site in addition to the fees and deductions. Those numbers were then plugged into our technology, creating the revenue calculations stated above. An in-house reporting system was built to generate a monthly report based on the calculations clearly laying out the amount of money owed to each client. Payments are now streamlined using Heartland for ACH payments, AMEX FX for international payments, and manually distributing payments via PayPal for a small amount of clients." <br><br> *Evidence*: Rolfs Decl., Ex. C Response to Interrogatory No. 1. | |
| 159.  McCandless never provided COY any code for the portion of its website that allows clients to see their revenue. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Rolfs Decl., Ex. A at 28:11-29:13; Bartlett Decl. ¶ 28; Lewis Decl. ¶ 12; Drew Decl. ¶ 12. | |
| 160.  On May 27, 2020, McCandless provided a login to a potential customer without requiring a non-disclosure agreement.<br><br>*Evidence*: Rolfs Decl., Ex. A at 76:20-78:16, Ex. R. | |
| 161.   MG disclosed the layout of its financial reporting pages and chat feature without requiring any non-disclosure agreement.<br><br>*Evidence*: Rolfs Decl., Ex. A at 66:11-14; 76:20-79:13, Ex. R. | |
| 162.   MG contends that it has "created a system for managing chargebacks":<br><br>"McCandless Group created a system for managing chargebacks, as remaining under 1% in terms of chargeback ratio is crucial to maintain good standing with major credit card companies. Utilizing technology to detect fraud such as limiting transactional amounts on new customers, monitoring for irregular activity, addressing customer concerns promptly, and ensuring clients are not abusing the system, McCandless Group is able to maintain a chargeback percentage much lower than industry standard."<br><br>*Evidence*: Rolfs Decl., Ex. C Response to Interrogatory No. 1. | |

DEFENDANTS AND COUNTERCLAIMANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 163.   Chargebacks occur when subscribers ask their credit card company to reverse charges, resulting in a loss of payment.<br><br>*Evidence*: Rolfs Decl., Ex. A at 60:19-25. | |
| 164.   Anyone with a basic understanding of online payments would realize it is important to have a low chargeback ratio.<br><br>*Evidence*: Rolfs Decl., Ex. A at 61:5-8, 61:13-63:13. | |
| 165.   MG contends its trade secrets consist of various discounts offered to subscribers, content pricing, and "marketing" through "social media" and on MG's websites:<br><br>"McCandless Group has also developed important processes for optimizing retention rates. Processes such as discounting all of the individually purchased content by a percentage, discounting a subscriber's first month or offering a discount for the first month for a returning subscriber were crucial processes in developing McCandless Group's retention rate. These processes were learned through exhaustive testing of promo offers, technologies, and strategies in order to optimize the retention rates.<br><br>McCandless Group was also able to maximize their revenue through methods of working with their clients. For instance, McCandless Group developed a process to be able to recommend pricing | |

Miller Barondess, LLP
ATTORNEYS AT LAW
2121 Avenue of the Stars, Suite 2600  Los Angeles, California 90067
Tel: (310) 552-4400  Fax: (310) 552-8400

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| of subscriptions based on their content, audience, and data retained on similar clients. The recommendations vary by clients but are suggested in order to maximize the client's revenue. Marketing through social media and within the websites in terms of the captions, messaging, and pricing for content have also proven a process developed by McCandless Group through trial and error which maximizes revenue." *Evidence*: Rolfs Decl., Ex. C Response to Interrogatory No. 1. | |
| 166.   On August 9, MG disclosed the name of one damages expert. *Evidence*: Rolfs Decl. ¶¶ 27, 28, Ex. Z. | |
| 167.   To this day, MG and McCandless have not produced any expert report. *Evidence*: Rolfs Decl. ¶ 28. | |
| 168.   MG's first and only request to COY for financial records was served on July 13, 2023. *Evidence*: Rolfs Decl. ¶ 29. | |
| 169.   COY's responses to these requests were due August 14, 2023—after expert disclosures. *Evidence*: Rolfs Decl. ¶ 29. | |
| 170.   McCandless claimed during deposition that it is appropriate to scrape information from a website if the website | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| does not have security measures in place to prevent it.<br><br>*Evidence*: Rolfs Decl., Ex. A at 118:14-119:18. | |
| 171.   McCandless testified that he asked his developers to scrape information from COY's sites.<br><br>*Evidence*: Rolfs Decl., Ex. A at 118:14-119:18. | |
| 172.   The COY WDA provides that MG would own the software but COY would own all content.<br><br>*Evidence*: Bartlett Decl., Ex. M §§ 1.2(f), 6.1, 6.3, 7. | |

DATED:  September 1, 2023          MILLER BARONDESS, LLP


                                  By:    /s/ *Colin H. Rolfs*
                                        COLIN R. ROLFS
                                        Attorneys for DEFENDANTS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400