1  COLIN H. ROLFS (State Bar No. 280654)
   crolfs@millerbarondess.com
2  MILLER BARONDESS, LLP
   2121 Avenue of the Stars, 26th Floor
3  Los Angeles, California 90067
   Telephone: (310) 552-4400
4  Facsimile: (310) 552-8400

5  Attorneys for Defendants and
   Counterclaimants
6  THE COY COLLECTIVE, INC,
   JESSICA BARTLETT, COREY LEWIS,
7  ROBERT HANKINS, and THOMAS
   DREW

8

9

10              UNITED STATES DISTRICT COURT

       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12
   MCCANDLESS GROUP, LLC,              CASE NO. 2:21-cv-02069-DOC-KES
13
              Plaintiff,              DECLARATION OF THOMAS
14                                    DREW IN SUPPORT OF MOTION
       v.                            FOR SUMMARY JUDGMENT
15
   THE COY COLLECTIVE, et al.,        Date:   Monday  October 2. 2023
16                                    Time:   8:30 a.m.
              Defendants.            Place:  Courtroom 10A
17
                                      The Hon. David O. Carter
18 THE COY COLLECTIVE, et al.,        and Magistrate Judge Karen E. Scott
19            Counterclaimants,       Complaint Filed:   March 8, 2021
                                      Discovery Cut-Off: August 28, 2023
20     v.                            Motion Cut-Off:    October 2, 2023
                                      Trial:             November 7, 2023
21 MCCANDLESS GROUP, LLC and
   NICHOLAS MCCANDLESS,
22
              Counterdefendants.
23

24       **[UNREDACTED VERSION OF DOCUMENT PROPOSED
              TO BE FILED UNDER SEAL]**
25

26

27

28

632108.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

# DECLARATION OF THOMAS DREW

I, Thomas Drew, declare as follows:

1.      I am a party in the above-entitled action.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' and Counterclaimants' Motion for Summary Judgment.

## Founding COY

2.      In 2020, I co-founded The COY Collective, Inc. ("COY") with Jessica Bartlett ("Bartlett") and Corey Lewis ("Lewis").

3.      COY was a technology company that helps creator clients to offer subscription-based, exclusive content to their followers.

4.      Bartlett, Lewis, and I conceptualized COY to be a more "selective" OnyFans—we would hand-pick influencers and offer them additional services like photo-shoots.

5.      COY vetted different options for building COY's subscription platform, including hiring McCandless Group, LLC ("MG") as a developer, hiring a company called Sedgwick, LLC ("Sedgwick") as a developer, or using a platform called Uscreen.

## COY Hires MG To Develop Websites

6.      Also on May 19, 2020, I sent Nick McCandless ("McCandless") a detailed list of requirements for the COY sites.  Attached hereto as **Exhibit A** is a true and correct copy of an email thread among McCandless, Lewis, and me from May 19, 2020 to May 21, 2020.

7.      On May 20, 2020, McCandless sent a non-disclosure agreement to me via DocuSign.  Attached hereto as **Exhibit B** is a true and correct copy of an email McCandless sent to me via DocuSign on May 20, 2020 containing a link to a non-disclosure agreement.

8.      I signed the non-disclosure agreement on May 21, 2020.  Attached

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

hereto as **Exhibit C** is a true and correct copy of an email I sent to McCandless via DocuSign on May 21 containing a link to a non-disclosure agreement I executed via DocuSign. Attached hereto as **Exhibit D** is a true and correct copy of the non-disclosure agreement I signed via DocuSign.

9. On May 24, 2020, Lewis forwarded an email from McCandless to me, including the attachment. Attached hereto as **Exhibit E** is a true and correct copy of an email I received from Lewis on May 24, 2020 and the attachment to the email. I do not recall ever sending the the document attached to Lewis' email to anyone else.

10. Ultimately, COY hired MG to develop COY's subscription platform.

11. I was excited to work with MG when COY selected MG as its developer. COY did not select MG as COY's developer so that COY could "steal" MG's technology. MG was COY's developer, and we were excited about the arrangement.

12. I do not recall ever receiving, or having access to, MG's source code for the websites it built.

**COY Considers Replacing MG With A Different Developer**

13. In October 2020, COY considered switching developers and reached out to Dionna McPhatter ("McPhatter") about building new sites for COY. I do not recall ever sending a copy of MG's "tech stack" to McPhatter. COY ultimately decided not to replace MG with McPhatter.

**COY Shuts Down**

14. After MG terminated its agreement with COY, COY was forced to hire a new developer to rebuild its creators' websites—Sedgwick. During this time, COY was focused to trying to service the models it already had under contract. To my knowledge, COY did not sign up any new models who were MG clients or attempt to compete with MG to sign up any new models. COY was not successful and shut down all of its subscription websites before the end of 2021.

15. I never received a salary or any profit distributions from COY.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

15.    I never received a salary or any profit distributions from COY.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 31st day of August 2023, at ___New York, NY_____.

_____

Thomas Drew

DECLARATION OF THOMAS DREW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

## INDEX OF EXHIBITS TO THE DECLARATION OF THOMAS DREW

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| A. | Email thread among McCandless, Lewis, and Drew from May 19, 2020 to May 21, 2020 | 6-12 |
| B. | Email McCandless sent to Drew via DocuSign on May 20, 2020 containing a link to a non-disclosure agreement | 13-15 |
| C. | Email Drew sent to McCandless via DocuSign on May 21, 2020 containing a link to a non-disclosure agreement | 16-18 |
| D. | Non-disclosure agreement signed via DocuSign | 19-25 |
| E. | Lewis forwarded an email from McCandless to Drew, including the attachment on May 24, 2020 | 26-30 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

632108.1

DECLARATION OF THOMAS DREW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Exhibit A

| | |
|---|---|
| **From:** | Nick McCandless |
| **Sent:** | Thursday, May 21, 2020 8:57 PM PDT |
| **To:** | Thomas Drew |
| **CC:** | Corey Lewis |
| **Subject:** | Re: COYClub Individual Site and Homepage Admin Requirements |

Sounds great! Looking forward to it!



**Nick McCandless**

Owner/Founder

McCandless Group

919-791-6441

nick@nickmccandless.com

www.nickmccandless.com

On May 21, 2020, at 8:04 PM, Thomas Drew <tdrew@1and1life.com> wrote:

Nick,

Thanks for the quick turnaround on this. We'll go over the "Needs to Be Developed" stuff with our digital mktg folks an get back to you on that asap.

-TD
**Thomas Drew**
**Co-Founder**
*Team 1AND1 Life*
*1AND1 Life Inc.*
tdrew@1and1life.com

*This message contains information that is confidential and/or may be privileged. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copy of this message or its attachments is strictly prohibited. In addition, emails sent from and to this 1and1life.com domain are monitored, archived, and subject to disclosure, including in connection with regulatory or other legal processes. If you have received this message in error, please advise the sender immediately by reply email and delete this message.*
--------------------------------------------------------
**Thomas Drew**
*MS Graduate at Columbia University in the City Of New York*
tsd2119@columbia.edu
(C) 616.460.8405

On Thu, May 21, 2020 at 7:31 PM Nick McCandless <nick@nickmccandless.com> wrote:
  Hey Guys,

**CONFIDENTIAL**

COY000042

Here is a spreadsheet on the breakdown of the requirements sent over. I broke the requirements up into the following groups:

DONE - These are already built out and supported

NEEDS CLARIFIED - Need to discuss and understand these better

NEEDS DEVELOPED - Have not been built yet

NOT POSSIBLE - Not possible or highly not recommended

I suggest going through this sheet and in order setting the priority of the tasks under NEEDS DEVELOPED so I can then go over the tasks with my team on a priority basis and quote out the times/costs associated with each of these tasks.

I am also working with my team on an estimate to design and build out the COYClub website and admin hub. I am working to have this to you guys by early next week at the latest.



On May 19, 2020, at 1:21 PM, Nick McCandless <nick@nickmccandless.com> wrote:

Thanks for sending this over! I will review everything internally with my team and work to get a plan together for you guys, just give me a few days as there is a lot here that will need to be built that is not currently supported. I will have an update for you guys as soon as possible.



On May 19, 2020, at 10:21 AM, Thomas Drew <tdrew@1and1life.com> wrote:

Hey Nick,

I'll put both requirement lists below:

## <span style="color:red">INDIVIDUAL SITES:</span>

**Video Player Capabilities:**
- High Quality Secure Player
- Resume Where You Left Off
- Auto play next video
- Chapters, episodes & collections
- GIF Overlay animation
- Picture in Picture
- Captions & Subtitles
- Setup Trailers & Previews
- Video Quality Picker
- Video Speed Adjustment
- Optional Offline Viewing

**Security:**
- Full Data Ownership
- HLS Video Encryption
- Simultaneous Login Sharing Protection
- SSL Certificate
- PCI Compliant
- Malicious Bot Detection & Rejection

**Payments & Monetization:**
- Built in Monetization & Billing
- Instant Payouts
- Accept All Credit & Debit Cards
- Accept Paypal
- Accept SEPA Direct Debit
- Accept Multiple Currencies
- Accept International Payments
- Sell Subscriptions
- Sell One-Time sales
- Rentals / PPV
- Free Trials & Freemium
- Upsells

**Customization:**
- Fully Customizable Website
- Customizable Themes
- Connect a custom domain
- Geo-Blocking

**CONFIDENTIAL**

COY000044

- SEO metadata
- Sales pages
- Catalog & Category pages
- Checkout pages
- Author Pages
- Built in Faqs & Terms Pages
- Add Additional Pages
- Advanced Theme Customization
- Custom Filters
- Localized Language

**Video CMS:**
- Built in CMS
- Centralized Admin for management
- Drip & Scheduled Content
- Video on Demand
- Live Streaming
- Auto record Live to VOD
- Bulk Uploading
- Dropbox Uploading
- Sync with Vimeo & Wistia

**Usage Limits:**
- Video Streaming & Bandwidth = Unlimited
- Global CDN Delivery
- Uploading & Encoding = Unlimited
- Video Storage = 7500+ minutes
- Number of Subscribers = Unlimited
- Number of One Time Sales = 1000+ Per Month
- Number of Admins = Unlimited
- Number of Products = Unlimited
- Upload Audio, Assets, Documents= Unlimited
- Simultaneous Viewers

**Community:**
- Built-In Commenting
- End User Profiles
- Community Posts

**Analytics:**
- Watch Time
- Video Views
- Top Videos
- Device Analytics
- Top Countries
- Sales & Financial Analytics

CONFIDENTIAL

COY000045

- Coupon & Discount Analytics
- Average Engagement
- Detailed Drill down
- Royalty Tracking

**Marketing Tools:**
- Unlimited Coupons
- Integrated Email Marketing
- Reduce Churn Toolbox
- Abandoned Cart Sequences
- Try Again for Free

**Integrations:**
- Zapier Integration
- Affiliate Tracking & Reporting
- Google Tag Manager
- Order & Conversion Tracking
- Mailchimp integration
- Google Analytics Integration
- Any other relevant 3rd party integrations

**Developer Tools:**
- Robust API
- Single Sign On
- Webhooks

**Support:**
- Setup Wizard
- Robust Help Tutorials
- Uptime SLA
- Email Support
- End User Support
- Success Account Manager


## HOMEPAGE/ADMIN HUB WISHLIST

- Have homepage be a main hub for us to log in to and be able to see a holistic view of
data and performance of all platforms created, as well as individually.
- Have homepage house a catalog of COYClub Creators with direct links to their sites.
- Ability to have regular homepage content quantifying who COYClub is and what we
do.
Here are some screens from UScreen for an example of potential Admin view
capability:
<IMG_0403.JPG>
<IMG_0404.JPG>
<IMG_0405.JPG>

CONFIDENTIAL                                                                    COY000046

&lt;IMG_0406.JPG&gt;
&lt;IMG_0407.JPG&gt;
&lt;IMG_0408.JPG&gt;


This is pretty thorough, but I'm sure you may have suggestions for additional things that we may need or additional guidance after you check this out.

Thanks Nick,

-TD

**Thomas Drew**
**Co-Founder**
*Team 1AND1 Life*
*1AND1 Life Inc.*
tdrew@1and1life.com

*This message contains information that is confidential and/or may be privileged. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copy of this message or its attachments is strictly prohibited. In addition, emails sent from and to this 1and1life.com domain are monitored, archived, and subject to disclosure, including in connection with regulatory or other legal processes. If you have received this message in error, please advise the sender immediately by reply email and delete this message.*
-------------------------------------------------------
**Thomas Drew**
*MS Graduate at Columbia University in the City Of New York*
tsd2119@columbia.edu
(C) 616.460.8405

CONFIDENTIAL

COY000047

Exhibit B

| From: | Nicholas McCandless via DocuSign |
|---|---|
| Sent: | Wednesday, May 20, 2020 11:31 PM PDT |
| To: | Thomas Drew |
| Subject: | Thomas Drew NDA |





Nicholas McCandless sent you a document to review and sign.

**REVIEW DOCUMENT**

**Nicholas McCandless**
nick@nickmccandless.com

Thomas Drew,

Please DocuSign Thomas Drew NDA.pdf

Thank You, Nicholas McCandless

Powered by                                                     **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
FA2F96A91C394498BCEDE691E5A528243

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction

**CONFIDENTIAL**                                                                                           **COY006884**

Management™.

**Questions about the Document?**

If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**

Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Nicholas McCandless who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

**CONFIDENTIAL**

**COY006885**

Exhibit C

| From: | Nicholas McCandless via DocuSign |
|---|---|
| Sent: | Thursday, May 21, 2020 8:54 AM PDT |
| To: | Thomas Drew |
| Subject: | Completed: Thomas Drew NDA |
| Attachments: | Thomas Drew NDA.pdf |





Your document has been completed

**VIEW COMPLETED DOCUMENT**

**Nicholas McCandless**

nick@nickmccandless.com

All parties have completed Thomas Drew NDA.

Powered by                                   **DocuSign**

**Do Not Share This Email**

This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**

Visit DocuSign.com, click 'Access Documents', and enter the security code:

09114C58D81A444B9DC6DEED882EAC3E3

**About DocuSign**

Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**

**CONFIDENTIAL**

COY006877

If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Nicholas McCandless who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

Exhibit D

DocuSign



**MUTUAL CONFIDENTIALITY AGREEMENT**

**THIS MUTUAL CONFIDENTIALITY AGREEMENT** (this "Agreement") is entered into as of the date on the signature page (the "Effective Date") by and between McCandless Group, LLC, with its principal place of business located at 127 Bowery, Irvine, CA 92612 (the "Developer") and Thomas Drew with a principal place of business located at 565 Broome St #S9C, New York, NY 10013 (the "Partner" or "you" or "your") each individually a "Party" and collectively the "Parties."

WHEREAS, the Parties are contemplating business transactions or a collaboration (the "Proposed Transaction") that will require each to disclose information to the other that is confidential, proprietary and competitively sensitive, for example, regarding software, technology, data, customers, products, processes, and business objectives (each as either a "Disclosing Party" or "Receiving Party");

WHEREAS, the Parties are willing to disclose said confidential and proprietary information to each other according to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.    For purposes of this Agreement, the term "Confidential Information" shall mean information, directly or indirectly relating to the Disclosing Party or its affiliates, shareholders, officers, directors or employees and obtained by the Receiving Party in connection with its evaluation of the Proposed Transaction prior to or after the date of this Agreement, (including information conceived or originated, discovered or developed by the Receiving Party by reference to such information or containing such information), and whether orally, in documents, through and by observation or otherwise, together with all summaries, compilations, analyses, and reports created by the Receiving Party from such information or that contains such information.  Without limiting the intended generality of the foregoing, Confidential Information shall include the Disclosing Party's existing or contemplated business, processes and services, techniques, components, sales, markets, costs, profits, research, development, inventions, purchasing, staff, employees, compensation, contractors, suppliers, customers, prospects, marketing, pricing policies, financial information, engineering and all other data.  Confidential Information also includes, but is not limited to, all proposals and all information and data furnished by or on behalf of the Disclosing Party or any of its Representatives (as defined below).

2.    The term "documents" includes, but is not limited to, writings, drawings, graphs, charts, photographs, tape recordings, computer application files, disc drives, tapes, compact discs, e-mail, electronic data, and other media, and data compilations in whatever form recorded or stored from which information can be obtained and/or translated if necessary, through detection devices, into reasonably usable form and any reproductions thereof.

1

DocuSign

3.      As used in this Agreement, the term "Representative" means, as to any person, such
person's wholly owned affiliates and their directors, officers, employees, agents and
advisers (including, without limitation, investment bankers, accountants and legal
counsel).  As used in this Agreement, "wholly owned affiliate" shall mean, with respect
to any person which (a) controls such person either directly or indirectly; or (b) is
controlled directly or indirectly by such person; or (c) is directly or indirectly controlled by
a person which directly or indirectly controls such person.  "Control" means, for purposes
of this definition of "wholly owned affiliate", the right to exercise a majority of the voting
rights (with the exception of voting rights attaching to de minimis shareholdings required
by applicable laws to be held by other person(s)) in the appointment of the directors or
similar representatives on the governing body of such person or, if there are no such
voting rights, the power to appoint the management or otherwise direct the business or
determine the policy of such person.  As used in this Agreement, the term "person" shall
be broadly interpreted to include, without limitation, any organ, ministry, agency or
instrumentality of any country or any other governmental, quasi-governmental or political
subdivision thereof; any corporation, company, partnership or joint venture; or any other
entity or individual.  In connection with the evaluation of the Proposed Transaction, the
Parties are willing, in accordance with the terms and conditions of this Agreement, to
disclose to the each other certain proprietary confidential information relating to the
Proposed Transaction and the Area.

4.      Subject to the immediately succeeding paragraph, unless otherwise agreed to in writing
by the Disclosing Party, the Receiving Party agrees: (a) to keep all Confidential
Information confidential and not to directly or indirectly disclose, disseminate, or reveal,
and to use its best efforts to prevent the use, dissemination, disclosure, or revelation of,
any Confidential Information to any person other than those of its Representatives who
are actively and directly participating in the evaluation and negotiation of the Proposed
Transaction or who otherwise need to know such Confidential Information for the
purpose of the Proposed Transaction and to cause those persons to observe the terms
of this Agreement; (b) not to directly or indirectly use Confidential Information for any
purpose other than in connection with the evaluation and negotiation of the Proposed
Transaction; and (c) not to disclose to any person (other than those of its
Representatives who are actively and directly participating in the evaluation and
negotiation of the Proposed Transaction or who otherwise need to know such
Confidential Information for the purpose of the Proposed Transaction and, in the case of
its Representatives, each of whom the Receiving Party will cause to observe the terms
of this Agreement as if he or she had been a party hereto) any information about the
Proposed Transaction, or the terms or conditions thereof or any facts or circumstances
relating thereto or the status thereof, including, without limitation, the fact that
Confidential Information has been or will be made available to the Receiving Party or its
Representatives or that discussions are taking place with respect to the Proposed
Transaction.  The Receiving Party will be responsible for any breach of the terms of this
Agreement by it or its Representatives.

5.      Neither Party will disclose to any person (other than those of its Representatives who
are actively and directly participating in the evaluation and negotiation of the Proposed
Transaction or who otherwise need to know such Confidential Information for the
purpose of the Proposed Transaction and, in the case of its Representatives, each of
whom the Party will cause to observe the terms of this Agreement as if he or she had
been a party hereto) any information about the Proposed Transaction, or the terms or

2

DocuSigr

conditions thereof or any facts or circumstances relating thereto or the status thereof, including, without limitation, the fact that Confidential Information has been or will be made available to the Parties or their Representatives or that discussions are taking place with respect to the Proposed Transaction.

6.      Confidential Information does not include, however, information that (a) is or becomes generally available to the public other than as a result of a disclosure, act or omission by the Receiving Party or its Representatives without the Disclosing Party's consent, (b) is or becomes available to the Receiving Party on a non-confidential basis from a person other than the Disclosing Party or its Representatives and other than as a result of a breach of an obligation of confidentiality to the Disclosing Party or its Representatives or a breach of any other obligation of such person not to transmit the information to the Receiving Party or any of its Representatives or (c) was known or developed independently by the Receiving Party without reference to any Confidential Information, or was available to the Receiving Party prior to its disclosure by the Disclosing Party. The onus of establishing that any of the above exceptions applies shall in each case be on the Receiving Party.

7.      In the event that the Receiving Party is requested pursuant to, or required by, applicable law, regulation, rule or order of a duly empowered court, tribunal or governmental entity having jurisdiction over it or its Representatives, to disclose any Confidential Information, the Receiving Party shall, to the extent permitted by such applicable law, regulation, rule or order, provide the Disclosing Party with prompt notice of such request or requirement in order to enable the Disclosing Party to seek an appropriate protective order or other remedy, to consult with the Receiving Party with respect to the Disclosing Party's taking steps to resist or narrow the scope of such request or requirement, or to waive compliance, in whole or in part, with the terms of this Agreement.  The Receiving Party will furnish only the portion of the Confidential Information that is legally required and will, at the Disclosing Party's sole expense, use its reasonable best efforts to ensure that all Confidential Information and other information that is so disclosed will be accorded confidential treatment by the Receiving Party thereof.

8.      This Agreement does not obligate the Disclosing Party to produce any Confidential Information whatsoever.  In the event that the Disclosing Party chooses to produce Confidential Information, this Agreement does not create a continuing obligation to produce any other information or to update any information that has been previously produced.

9.      All documents containing, and all other tangible and intangible forms of, Confidential Information, including copies thereof, shall belong to and remain the sole property of the Disclosing Party. The Receiving Party shall acquire no proprietary interest in or right to any of the Confidential Information absent written agreement by the Disclosing Party.

10.     The Receiving Party shall not take or make copies of the Confidential Information or any of it, or authorize any other person to do so, other than for the purpose of supplying the Confidential Information to any of its Representatives to whom disclosure of such information is permitted under the terms of this Agreement.  If at any time the Disclosing Party, in its sole discretion, so requests in writing, then the Receiving Party will promptly deliver to the Disclosing Party all original Confidential Information with respect to the relevant Proposed Transaction and promptly deliver to the Disclosing Party or destroy all copies, reproductions, summaries, compilations, analyses and extracts thereof or

3

DocuSign

based thereon in the possession of the Receiving Party or its Representatives, whether maintained in written form or in any electronic or computerized format, and certify to the Disclosing Party that all such originals have been delivered to the Disclosing Party and that such destruction has occurred.

11.  The Receiving Party acknowledges that neither the Disclosing Party nor any of its Representatives makes any express or implied representation or warranty as to the accuracy or completeness of any Confidential Information, and the Receiving Party agrees that none

of such persons shall have any liability to the Receiving Party or any of its Representatives relating to or arising from its or their use of any Confidential Information or for any errors therein or omissions therefrom.  The Receiving Party also agrees that it is not entitled to rely on the accuracy or completeness of any Confidential Information.  The Receiving Party acknowledges and agrees that the Confidential Information is being provided solely for the purpose of assisting its independent evaluation and analysis of the Disclosing Party and its assets.

12.  NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT OR LAW TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS DUE TO BUSINESS INTERRUPTIONS OR OTHERWISE, IN CONNECTION WITH THIS AGREEMENT.

13.  In the event of litigation relating to this Agreement, the non-prevailing Party as finally determined by a court of competent jurisdiction shall be liable and pay to the other Party all reasonable costs incurred by such other Party in connection therewith, including, but not limited to, reasonable attorneys' fees incurred by such other Party in connection with such litigation, including any appeal therefrom.

14.  It is further understood and agreed that no failure or delay by the Disclosing Party in exercising or pursuing any right, power, privilege or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise or pursuit thereof preclude any other or further exercise or pursuit thereof or the exercise or pursuit of any other right, power, privilege or remedy hereunder.

15.  This Agreement shall be effective as of the date on the signature page (the "Effective Date") and expire on the fifth anniversary thereof. This Agreement may not be amended, modified, superseded or cancelled, nor may any of the terms, covenants, representations, warranties or conditions hereof be waived, except by a written instrument executed by the parties.

16.  If any provision of this Agreement becomes or is found to be illegal or unenforceable for any reason, such clause or provision must first be modified to the extent necessary to make this Agreement legal and enforceable and then if necessary, second, severed from the remainder of the Agreement to allow the remainder of the Agreement to remain in full force and effect.

17.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

4

DocuSign

IN WITNESS WHEREOF, the Parties have executed this Agreement effective the date stated above.

| DEVELOPER: | PARTNER: |
|---|---|
| Business Name: McCandless Group, LLC | Business Name: Thomas Drew |
| Address: 127 Bowery, Irvine, CA 92612 | Address: 565 Broome St #S9C, New York, NY 10013 |
| Telephone Number: 919-791-6441 | Telephone Number: 616-460-8405 |
| Email Address: nick@nickmccandless.com | Email Address: TDrew@1and1life.com |
| DocuSigned by:<br>*Nicholas McCandless*<br>CC0CECA0BA5C475...<br>By: _____<br>Signature | DocuSigned by:<br>31D4D0E10A54456...<br>By: _____<br>Signature |
| Full Name: Nicholas McCandless<br>Title: CEO/Owner/Founder | Full Name: Thomas Drew |
| Date: _____ 5/21/2020 _____ | Date: _____ 5/21/2020 _____ |

5

Drew Declaration - Page No. 25

Exhibit E

| | |
|---|---|
| **From:** | Corey Lewis |
| **Sent:** | Sunday, May 24, 2020 9:55 AM PDT |
| **To:** | Thomas Drew |
| **Subject:** | Fwd: McCandless Group Model Platform Technology Stack |
| **Attachments:** | McCandless Group Model Platform Technology Stack.pdf, .htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Nick McCandless <nick@nickmccandless.com>
> **Date:** May 23, 2020 at 10:01:14 PM EDT
> **To:** Corey Lewis <corey@1and1life.com>
> **Subject: McCandless Group Model Platform Technology Stack**

Attached is the overview of our technology stack. Let me know of any questions.

**CONFIDENTIAL**                                                                    **COY006809**



## Architecture of Technology

Server:

1. Node.js server with express
2. MongoDB Database

Client:

1. React with Redux

Other Services:

1. FFmpeg to transcode and process videos
2. TinyPNG to compress images
3. S3 for storing data
4. CloudFront to serve private content securely
5. Nginx to reverse proxy and static server react builds
6. Socket io for chat
7. CCBill for payment processing

Hosting:

1. Amazon AWS EC2 instances
2. S3 to store media files
3. Amazon Route 53
4. AWS CloudWatch to monitor server resource utilization

## Handling and Management of Data

User Roles

1. User
    a. Guest user (visitor not yet registered)
    b. Registered user
    c. Active Paying subscriber
2. Content Manager
3. Model
4. Super Admin

- Website settings are stored on MongoDB which decides theme and other options.
- Users can register and then subscribe to view exclusive content.
- Active subscribers can also engage in chat with the model.
- Subscribers can update profile settings and manage their subscription access.
- Subscribers can tip and purchase locked content on the model's exclusive content feed and in private chat.

## Security and Privacy of Content and Customer Data

1. Only users with a specific role can access the data with the correct JWT token.
2. API routes are protected based on user roles.
3. Uploaded content is stored on s3 with a unique id and the content is served with a signed url with CloudFront.

## Scalability

1. Sites are hosted across infinitely scalable AWS server instances to allow for no limitations of traffic, bandwidth, and activity.
2. Databases are hosted across MongoDB databases that are built for infinite scalability.
3. Dedicated server instances for video transcoding and processing services that websites leverage for videos.
4. Image processing is carried out by the same node.js instance which is responsible for the API.
5. Currently launching over 30 websites a week with the capacity to launch over 200 websites a week.

**CONFIDENTIAL**

Drew Declaration - Page No. 29



**CONFIDENTIAL**

**COY006813**