1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

MCCANDLESS GROUP, LLC,
   Plaintiff,

    v.

THE COY COLLECTIVE, INC. et al.,
   Defendants.

_____

THE COY COLLECTIVE, et al.,
   Counterclaimants,

    v.

MCCANDLESS GROUP LLC and
NICHOLAS MCCANDLESS,
   Counter-Defendants.

**Case No.  LA CV 21-02069-DOC-KES**

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [189]**

1    Before the Court is Plaintiff and Counter-Defendants' Motion for Summary Judgment

2    ("MSJ") (Dkt. 189). The Court heard oral arguments on October 23, 2023. For the reasons

3    explained below, the Court DENIES the Motion for Summary Judgment.

4

5    **I.     BACKGROUND**

6    **A. Facts[1]**

7        In 2020, Defendant Jessica Bartlett ("Bartlett"), Corey Lewis ("Lewis"), and Thomas

8    Drew ("Drew") co-founded COY to provide creator clients with a platform to offer subscription

9    services. Plaintiff and Counter-Defendant's Statement of Uncontroverted Facts ("PSUF") (Dkt.

10   226-1) ¶ 68. COY ultimately hired MG to develop COY's subscription platform. *Id.* ¶ 70. In

11   early May 2020, Barlett sent text message to McCandless notifying him that she and a business

12   associate were collecting information for an investor pitch. *Id.* ¶¶ 71-73. On May 20, 2020,

13   McCandless sent non-disclosure agreements ("NDAs") to Bartlett, Lewis, and Drew, which

14   they signed on May 21. *Id.* ¶¶ 74-75.

15       On May 23, 2020, McCandless sent to Lewis MG's "Tech Stack." *Id.* ¶¶ 2-3. The Tech

16   Stack was built by McCandless and a partner named either Rayo Innovations or Rayo Infotech.

17   *Id.* ¶ 4. The Tech Stack contained information relevant to MG's website. *Id.* ¶ 5. The parties

18   dispute whether the components of the Tech Stack were specifically components of MG's

19   website or whether they were common, third-party components, as well as whether the Tech

20   Stack qualified as confidential information as defined in the NDA. *Id.* ¶¶ 5-6. Lewis sent the

21   Tech Stack to several third parties with whom MG did not have NDAs. *Id.* ¶¶ 8-10. Lewis'

22   NDA specifically allowed for disclosure to "[r]epresentatives who are actively and directly

23   participating in the evaluation and negotiation of the Proposed Transaction." *Id.* ¶ 104. The

24   term "Representative" is broadly defined to include all third party "advisers": [T]he term

25   "Representative" means, as to any person, such person's . . . advisers (including, without

26   limitation, investment bankers, accountants and legal counsel). *Id.* ¶ 105. Andy Geller

27   ───────────────

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the
28   disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has
     considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them
     because the Court does not rely on the disputed evidence.

1  ("Geller") was the manager of COY's principal investor and was advising COY on its business.

2  *Id.* ¶¶ 78-79. The parties dispute whether Geller was actively and directly participating in

3  negotiations. Bartlett had informed McCandless that COY was collecting information to share

4  with its investors for purposes of deciding whether to retain MG. *Id.* ¶¶ 80; 107.

5        Coy executed a Web Development Agreement ("WDA") with Coy on August 6, 2020.

6  *Id.* ¶¶ 11; 81. The COY WDA specifically excludes from the definition of "Confidential

7  Information" any information that is "publicly known." *Id.* ¶¶ 109. The parties dispute whether

8  the Tech Stack was proprietary technology that fit under the confidentiality term in the WDA,

9  and whether Defendants were aware the technology was proprietary. *Id.* ¶¶ 12; 110. Through

10  Bartlett's MG website, made pursuant to a WDA, Coy had access to Content Creator/Content

11  Manager accounts. *Id.* ¶¶ 13. Coy's Chat feature and MG's chat feature share similarities at

12  least in their basic layout and other industry-standard practices. *Id.* ¶¶ 14-15. OnlyFans' and

13  PlayBoy's chat features (competitor websites) show the amount of money each subscriber has

14  paid next to each subscriber's name. *Id.* ¶ 108.

15        By October 2020, friction had emerged between COY and MG. *Id.* ¶ 85. On November

16  2, 2020, Jason Moskowitz ("Moskowitz"), McCandless' business partner, sent a letter to COY

17  demanding significant changes to the commercial terms of the COY WDA as a condition of

18  continuing the agreement. *Id.* ¶ 86. The letter concluded, "[i]f the result is that you can't accept

19  this and need to move in another direction— perhaps even becoming our competitor— we are

20  fully aware of that and will be helpful during this transition." *Id.* ¶ 87. On November 3, 2020,

21  Bartlett notified Moskowitz that COY was not interested in the changed terms so "would be

22  taking the option in which sites are terminated on Dec. 31st." *Id.* ¶ 88.

23        McCandless had set up an account with the payment processing company— CCBill—in

24  MG's name for COY's websites, which stored subscriber information and allowed for recurring

25  subscription charges. *Id.* ¶ 89. The parties dispute whether McCandless did so at Lewis' request

26  and whether CCBill or McCandless subsequently refused to transfer the account or subscribers

27  to COY. *Id.* ¶ 90. Despite hiring a new developer, Coy did not succeed in relaunching its

28  website after the split and shut them all down before the end of 2021. *Id.* ¶¶ 91-93.

1    After the relationship between Coy and MG ended, Defendants hired Pete Romano

2    ("Romano") of Segwik as their website developer. Segwik had an existing technology platform

3    which it had developed before being retained by COY, which it uses for multiple clients, and it

4    used this platform to build sites for COY's clients. *Id.* ¶ 114. The parties dispute whether

5    Romano also had access to the working of MG's site and received the Tech Stack. *Id.* ¶¶ 111-

6    114.

7    Bartlett is a social media personality and model who became well-known for her photos

8    and videos, and who has also started an agency to provide management services to other

9    models and influencers. *Id.* ¶¶ 52-55. Among Bartlett's images are one- hundred-and-eighty

10   photographs (the "Works"). The Works were registered to Bartlett with the U.S. Copyright

11   Office with Registration Nos. VA 2-282-293 and VA 2-282-288 in compliance with the

12   Copyright Act. *Id.* ¶ 56. In late 2019, McCandless pitched Bartlett on building a personal

13   website for her to "monetize" her following on Instagram and other sites. *Id.* ¶ 57. Bartlett

14   looked into MG and found that MG had only built sites for other model/influencer clients with

15   relatively small followings (between 20,000 and 30,000 followers on Instagram), while Bartlett

16   had around 800,000 followers at the time. *Id.* ¶¶ 58-59. On October 27, 2019, Bartlett and MG

17   executed a Web Development Agreement. *Id.* ¶ 60. The Works were then added to Bartlett's

18   website created by MG. *Id.* ¶ 61. The parties dispute who posted the Works to the website and

19   the extent to which MG was authorized to use the Works. *Id.* ¶¶ 61-62.

20   Shortly after hiring MG, Bartlett also helped MG recruit another popular Instagram

21   model (Kiki Dos Passos ("Passos")). *Id.* ¶ 63. Because of Bartlett's popularity, McCandless

22   used her, among other personalities, to market his services. *Id.* ¶ 65. McCandless also asked

23   Bartlett to provide a "testimonial" video for him to use, which she provided and he posted to his

24   Instagram. *Id.* ¶¶ 66-67.

25   In August 2020, Bartlett and MG agreed to modify two WDAs so that her and one other

26   model's site would at least partially transfer to COY, with COY paying MG a minimum

27   amount for these two specific sites. *Id.* ¶ 83. On September 7, 2020, McCandless emailed

28   Bartlett to confirm that the financial responsibilities in the Bartlett WDA had terminated: "[A]s

of September 1, 2020 any and all financial responsibilities that McCandless Group, LLC committed to in our Website Development Agreement are no longer the responsibility of McCandless Group, LLC." *Id.* ¶ 84. The parties dispute whether they still had other duties under the contract and whether the WDA itself was terminated. *Id.* ¶¶ 31; 84.

After Bartlett's website was disabled, when a user attempted to visit Bartlett's main MG-website, they would be met with an error message. *Id.* ¶ 18. MG and McCandless, however, kept copies of the Works on their servers until after Defendants filed their counterclaims. *Id.* ¶¶ 94-98. On April 20, 2022, Bartlett filed a counterclaim for copyright infringement based on MG and McCandless' continued publication of the Works. *Id.* ¶ 96. The counterclaim identifying the images and URLs allowing public access was filed on April 4, 2022. *Id.* ¶ 33. The parties dispute whether the WDAs had been terminated before Defendant asked to have the Works removed, as well as what date the images were eventually removed from the server. *Id.* ¶¶ 34; 96. Before their removal, Works were accessible at least to an unknown number of individuals with content creator or content manager access to MG's platform. *Id.* ¶¶ 19; 95; 99. While the URLS for each image (which included long strings of characters unique to each image) were only findable by those with that access who had saved the links prior to Bartlett's website being shut down, any person that entered the correct URL into a web browser could access the photos. *Id.* ¶¶ 16-23; 45-47. The 156 images that are alleged to constitute misappropriation have not been used commercially, whether to advertise anything, and cannot be purchased after Bartlett's website was shut down. *Id.* ¶¶ 24. Bartlett did not try to sell these specific images afterwards, but continues to do some modeling. *Id.* ¶¶ 26-27.

Starting in late 2020, Bartlett and her counsel repeatedly told McCandless that he was not authorized to use her name or image in any capacity. *Id.* ¶ 100. McCandless admits that he left Bartlett's testimonial on his Instagram page and did not remove the video until September 2022. *Id.* ¶¶ 37; 102-103. Although not tied specifically to Bartlett's video, MG has produced financial records of revenue from new models during the period of use of Bartlett's endorsement video for recruitment. *Id.* ¶ 115. Bartlett was upset by the use of her image to

endorse a company with whom she was also engaged in litigation. *Id.* ¶¶ 25; 28; 116. She did not see a therapist related to the alleged misappropriation. *Id.* ¶ 29.

**B.  Procedural History**

The Court includes here only the relevant procedural history to the present motions in the interest of clarity. On March 16, 2022, Plaintiff filed its Third Amended Complaint against Defendants ("TAC") (Dkt. 89). Plaintiff brought nine causes of action including claims for misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1832, 1836 et eq., breach of contract, fraud, and breach of fiduciary duty. *See generally* TAC.

Defendants filed their First Amended Counterclaim on June 6, 2022 ("FACC") (Dkt. 112). Defendants and Counterclaimants brought claims for copyright infringement, false association, violation of right of publicity, appropriation of name and likeness, false advertising, breach of contract, cyberpiracy, intentional interference with contract, breach of fiduciary duty, and unfair competition. *See generally* FACC. Counter-Defendants filed a Motion to Dismiss Counterclaimants' First Amended Counterclaims on July 18, 2022. On June 12, 2023, the Court denied this motion with the exception of one breach of contract claim, which it dismissed (Dkt. 165).

On September 5, 2023, Plaintiff and Counter-Defendants filed a Motion for Summary Judgment as to Defendants and Counterclaimants Claims ("MSJ") (Dkt. 189). Specifically, Plaintiff sought partial summary judgment against Lewis on breach of the NDA (liability only) and against Coy on breach of the confidentiality clause in the WDA (liability only). MSJ at 1. Additionally, as Counter-Defendants, MG and McCandless sought summary judgment on the counterclaims for violation of the right of publicity, misappropriation of name and likeness, and copyright infringement. *Id.* at 1-2. Plaintiff also filed a statement of undisputed facts (Dkt. 189-1). On September 21, 2023, Defendants and Counterclaimants opposed ("Opp'n") (Dkt. 211) and submitted a separate statement of undisputed facts (Dkt. 211-2). Plaintiff filed its Reply

("Reply") (Dkt. 226) and a response to the statement of undisputed facts (Dkt. 226-1) on October 5, 2023.[2]

The Court heard oral arguments on October 23, 2023.

## II. LEGAL STANDARD

### B. Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the

---

[2] Plaintiff objected to this filing as untimely on September 25, 2023 (Dkt. 217). The Court issued an order giving Plaintiff until October 6, 2023 to submit its Reply (Dkt. 219). The Court notes Defendants' filing was untimely, but nevertheless considers it here.

record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III.    DISCUSSION

Plaintiff moves for summary judgment, or alternatively partial summary judgment, pursuant to Fed. R. Civ. P. 56 and Local Rule 56 on five claims (1) against Lewis on breach of the NDA (liability only); (2) against Coy on breach of the confidentiality clause in the WDA (liability only); as well as on Defendants' counterclaims for (3) violation of the right of publicity and misappropriation of name and likeness; and (4) copyright infringement. MSJ at 1-2.

Specifically, Plaintiff argues they are entitled to summary judgment on the grounds that (1) Plaintiff has established Lewis' liability for Breach of Contract for breach of the non-disclosure agreement because Lewis signed a non-disclosure agreement, received the "Tech Stack" which was subject to the NDA, and then sent the same "Tech Stack" out to a third-party in breach of the agreement; (2) Plaintiff has established liability for Breach of Contract against Coy for breach of the confidentiality clause in the WDA on the basis that Coy copied MG's chat feature, and used it on their own version of a competing website; (3) Defendants' counterclaims for Violation of the Right of Publicity and Appropriation of Name and Likeness related to the video testimonial fail because there was no injury, there was not a "knowing use" of the video, and the use was incidental;[3] and (4) Defendants' counterclaims for Copyright Infringement related to any images of Jessica Bartlett, including the 156 images referenced in the FACC, and

---

[3] Plaintiff's MSJ discusses Defendants' counterclaims for this cause of action as they relate to the Works, MSJ at 17-18, but Defendants assert this cause of action is based solely on the video testimonial, Opp'n at 12-13. Plaintiff does not dispute this in its Reply and limits its discussion on this cause of action to discussion of the video. Reply at 9-10. Accordingly, the Court similarly limits its discussion here.

1  the video testimonial fail because the infringement was not caused by MG or McCandless. MSJ

2  at 1-2. The Court addresses each argument in turn.

3

4  **A.  Breach of the NDA by Lewis (Liability Only)**

5       "A claim for breach of a non-disclosure agreement is essentially a breach of contract

6  claim." *Viasat, Inc. v. Space Sys./Loral, Inc.*, No. 312CV00260HWVG, 2014 WL 11889467, at

7  *4 (S.D. Cal. Feb. 4, 2014). In California, "[t]o prevail on a cause of action for breach of

8  contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract

9  or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the

10  plaintiff." *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).

11       Interpretation of contract language is a matter of law. *Irwin v. Carpenters Health &*

12  *Welfare Trust Fund*, 745 F.2d 553, 555 (9th Cir. 1984). In a contract dispute, "[s]ummary

13  judgment is appropriate when the contract terms are clear and unambiguous, even if the parties

14  disagree as to the meaning." *United States v. King Features Entertainment, Inc.*, 843 F.2d 394,

15  398 (9th Cir. 1988).

16       Under California law, a contract is to be interpreted so as "to give effect to the mutual

17  intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. Intent

18  should be ascertained "solely from the written contract if possible." *Windsor Pacific LLC v.*

19  *Samwood Co.*, 152 Cal. Rptr. 3d 518, 527 (2013). California law instructs that a court is to

20  conduct "at least a preliminary consideration of all credible evidence offered to prove the

21  intention of the parties." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69

22  Cal. 2d 33, 39-40 (1968). Then, after considering the language of the contract in light of this

23  extrinsic evidence, the court determines whether the contract is reasonably susceptible to more

24  than one of the interpretations that the parties advance. *Id.* at 40. If it is not, then the court may

25  resolve the question as a matter of law, but if it is, then the meaning of the document in light of

26  the extrinsic evidence is a question for the finder of fact. *Id.*; *see also First Nat'l Mortg. Co. v.*

27  *Fed. Realty Inv. Trust*, 162 Cal. App. 4th 1107, 1126-27.

28

1    The court finds no genuine dispute as to the first two elements of the cause of action—

2    Defendants do not dispute that Lewis signed the NDA or contend that Plaintiff did not perform

3    under the contract. *See* PSUF ¶¶ 74-75.

4    The Court finds a genuine dispute about whether Lewis breached the contract. First, there

5    is a genuine dispute about whether the Tech Stack constitutes confidential information under the

6    NDA, such that sharing it would constitute a breach, or merely a collection of common industry

7    practices. *Id.* ¶¶ 5-6. Upon examining the Tech Stack, (Dkt. 187-5, 189-7 (Redacted)), the Court

8    finds the question of whether it is confidential information under the NDA cannot be resolved as

9    a matter law and presents a triable issue of material fact. Second, there is a genuine dispute over

10   whether Lewis was permitted to disclose the Tech Stack to Geller under the terms of the NDA.

11   It is undisputed that Lewis sent the Tech Stack to Geller and that Geller did not have an NDA

12   with MG. *Id.* ¶¶ 8-10. The record shows, however, that Lewis' NDA specifically allowed for

13   disclosure to "[r]epresentatives who are actively and directly participating in the evaluation and

14   negotiation of the Proposed Transaction." *Id.* ¶ 104. Plaintiff does not dispute that Geller falls

15   within the definition of a representative. *Id.* 104-105. The issue of whether Geller falls within

16   the carve-out, and whether sharing the (purportedly confidential) Tech Stack with him violated

17   the NDA, therefore depends on whether he was actively and directly participating in the

18   evaluation and negotiation of the Proposed Transaction. The Court also finds this a triable issue

19   of material fact that cannot be resolved as a matter of law,

20   Plaintiff does not seek summary judgment on the fourth element of the claim (damages)

21   as it contends damages cannot be fully ascertained because of newly discovered information

22   from the deposition of Matt Silk on August 16, 2023. MSJ at 15.

23   As the Court finds genuine issues of material fact exist as to Lewis' liability for breach of

24   the NDA, the Court DENIES partial summary judgment on this claim.

25

26

27

28

**B.  Breach of the WDA by Coy (Liability Only)**

The Court assesses Coy's liability for breach of the WDA under the same breach of contract standard as above. Again, the first two elements of a breach of contract claim are undisputed. Turning to the third element, the Court finds a genuine dispute of material fact as to whether Coy breached the WDA in creating its chat feature. It is undisputed that MG and Coy's chat features shared similar design elements, such as the display of how much each subscriber had paid next to their name. *See* PSUF ¶¶ 14-15. Other industry competitors, however, such as OnlyFans and PlayBoy, have similar chat features with that same design element. *Id.* ¶ 108. "[T]rade secrets plaintiffs must show "more than speculation" of misappropriation; simply pointing out that products are 'the same or conceptually similar' is insufficient to survive summary judgment." *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 3919469, at *14 (N.D. Cal. June 9, 2023). Similarly, it is insufficient to affirmatively obtain summary judgment on a claim. *See also M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 400 F. Supp. 3d 867, 893 (N.D. Cal. 2019) **("The fact that [two companies] developed similar technology does not raise [plaintiff's] theories above the speculative level")**. Whether the chat programs are so similar that MG can establish Coy copied MG's chat feature, whether the chat feature was confidential information protected under the WDA, and whether Segwik, the developer Coy hired after the relationship with MG ended, had access to the Tech Stack in developing Coy's chat feature are all genuinely disputed issues of fact. Accordingly, the Court DENIES partial summary judgment on this claim.

**C. Defendants' Counterclaims for Violation of the Right of Publicity and Appropriation of Name and Likeness**

"There are two vehicles a plaintiff can use to protect [the right to profit from the commercial value of one's identity]: a common law cause of action for commercial misappropriation and a [California Civil Code] section 3344 claim**."** *Orthopedic Systems, Inc. v. Schlein*, 202 Cal.App.4th 529, 544 (2011). "To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: '(1) the defendant's use of the plaintiff's

1   identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage,

2   commercially or otherwise; (3) lack of consent; and (4) resulting injury.'" *Stewart v. Rolling*

3   *Stone LLC*, 181 Cal. App. 4th 664, 679 (2010). "Under section 3344, a plaintiff must prove all

4   the elements of the common law cause of action. In addition, the plaintiff must allege a knowing

5   use by the defendant as well as a direct connection between the alleged use and the commercial

6   purpose." *Id.*

7          The Court finds no genuine dispute as to the first three elements as they relate to the video

8   testimonial, which Plaintiff does not contest. *See* PSUF ¶¶ 37; 65-67; 100-103; MSJ at 16-21.

9          The Court also does not find a genuine dispute as to the fourth element, whether Bartlett

10  has established a resulting injury. The invasion of plaintiff's right to privacy constitutes the harm,

11  entitling plaintiff to recover for all damage caused by the invasion. While special damages may

12  be awarded if sustained, general damages are recoverable without a showing of specific loss. Cal.

13  Civ. Code section 3333; *Fairfield v. American Photocopy Equip. Co.*, 138 Cal.App.2d 82, 89

14  (1955). A a right of personality claim may be pursued based on any "injury to the feelings."

15  Miller v. Collectors Universe, Inc., 159 Cal. App. 4th 988, 1002 (2008). Here, Bartlett has alleged

16  such an injury to the feelings, which Counter-Defendants concede in their Reply. PSUF ¶¶ 25;

17  28; 116; Reply at 9. The extent of the damages Counterclaimants can seek for the injury is not at

18  issue here. *See* Opp'n at 13. Accordingly, pursuant to Fed. R. Civ. P. 56(f), the Court finds

19  Counterclaimants have established a prima facie case for common law commercial

20  misappropriation.

21         There is a genuine dispute of fact, however, as to Counter-Defendants affirmative defense

22  of incidental use. No California court has yet held the incidental use defense applies to right of

23  publicity claims, but the Ninth Circuit states the defense is "widely recognized." *Davis v.*

24  *Electronic Arts Inc.*, 775 F3d 1172, 1180, fn. 5 (9th Cir. 2015). Under this defense, a defendant's

25  "insignificant or fleeting use of plaintiff's identity is not an infringement." *Id.* (internal quotes

26  omitted). It is undisputed that Bartlett's video was a small part of a longer endorsement video.

27  PSUF ¶ 37. The parties dispute, however, whether McCandless was "unaware" this video was on

28  his Instagram and what commercial impact the video had. *Id.* ¶ 38. Whether McCandless is

credible and whether MG's use of Bartlett's testimonial was insignificant or fleeting enough to qualify as incidental are questions of fact for the jury, not questions of law appropriate for resolution at the summary judgment stage. *See Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1101 (E.D. Cal. 2009) (denying summary judgment on incidental use defense "when use of plaintiff's name and reference to his accomplishment was a small part of the 755–word Publication").

Accordingly, the Court DENIES summary judgment as to the common law misappropriation claim.

Finally, as to the knowing element of the statutory appropriation claim, the Court similarly finds a credibility determination of whether McCandless knew the video was still on his Instagram page is similarly inappropriate for resolution here.

The Court therefore DENIES summary judgment as to the statutory appropriation claim.

**D. Defendants' Counterclaims for Copyright Infringement**

The elements of copyright infringement are: (1) ownership of a copyright; and (2) violation of "one of the exclusive rights in copyright set forth in 17 U.S.C. § 106." Bell, 12 F.4th at 1071. One of the exclusive rights of copyright is "to display the copyrighted work publicly." 17 U.S.C. § 106(5).

The Court finds no genuine dispute as to the first element of ownership of a valid copyright. MG and McCandless do not dispute that Bartlett has registered copyrights in the Works. PSUF ¶ 56. Further, "[a] copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

The Court finds a genuine dispute of fact as to whether Counter-Defendants violated Bartlett's exclusive right to display her copyrighted works publicly. Counterclaimants argue the present case is governed by the Ninth Circuit's decision in *Bell v. Wilmott Storage Servs.*, LLC, 12 F.4th 1065 (9th Cir. 2021).

In *Bell*, the Ninth Circuit held that an infringing public display includes making an image

available via a server that is publicly accessible, regardless of whether anyone accesses the photo: By displaying the [photo] on a server that was publicly accessible to anyone with an Internet connection, . . . [the defendant] publicly displayed the photo, regardless of whether or not any particular person actually found and viewed it. 12 F.4th at 1073. The Circuit found the display was public even when, as here, the image would not be accessible by an average internet user and could only be found by someone with the particular URL address. *Id.* at 1070. Causation was established because Wilmott had "assum[ed] responsibility for . . . the servers." *Id.* This was "volitional for purposes of copyright infringement." Id. In other words, Bell establishes that general control of the server that is publicly displaying the image may be sufficient to impose liability.

The Court acknowledges *Bell* presents a slightly different set of facts in that Counter-Defendants allows users of his site to upload content directly and asserts Bartlett originally uploaded the photos. PSUF ¶ 49. Regardless of who initially uploaded the photos, however, the record reflects the Works were left up on MG's server for months, between April 2023 and September 2023, after Bartlett requested they be removed and filed the present counterclaims. *See, e.g., id.* ¶ 51. MG and McCandless may not have caused the photos to be uploaded to their servers, but may have caused the photos to remain public, without Bartlett's consent, for five months. While it is undisputed that the fact that the Works were still accessible through these unique URLs was because of the architecture of MG's website, *id.* ¶ 50, this does not absolve Counter-Defendants of all responsibility for displaying the copyrighted images. Indeed, McCandless and MG's investment in and ownership of the architecture of their website is a central subject of this litigation. Accordingly, Counter-Defendants are not entitled to summary judgment and the Court DENIES their motion as to the copyright claim.

1    **IV.    DISPOSITION**

2        For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary

3    Judgment.

4

5

6        DATED: October 23, 2023

7                                                    _David O. Carter_

8                                                    DAVID O. CARTER

9                                                    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28